Opinion
 

 SILLS, P. J.
 

 In this appeal, a noncustodial parent challenges a family support order which took more than
 
 83 percent
 
 of his after-tax monthly monetary income. The large percentage was essentially the result of two factors. One, the trial judge appears to have used, to determine the
 
 permanent
 
 spousal support component of the family support order, a figure generated by a privately developed computer program which was intended to be used to calculate
 
 temporary
 
 support. Temporary support, as most family lawyers know, usually is higher than permanent support because it is intended to maintain the status quo
 
 prior
 
 to the divorce. As we explain below, use of the temporary figure was error. The spousal support component of a permanent family support order must be based on the statutory factors enumerated in section 4320 of the Family Code,
 
 [1]
 
 not pegged to a number generated by a computer program intended for use in calculating temporary support.
 

 Two, the trial court characterized certain employer-provided benefits as “nontaxable.” Such a characterization, in the “Alice in Wonderland” world of algebraically determined support orders (see
 
 In re Marriage of Carter
 
 (1994) 26 Cal.App.4th 1024, 1029, fn. 5 [33 Cal.Rptr.2d 1] [criticizing process of determining child support in California as a “bizarre” “Alice in Wonderland” situation]) yielded a substantially higher support order than would have otherwise been the case because the supporting parent received no credit for his potential tax liability corresponding to those benefits. His annual net disposable income was overstated and, consequently, so was the amount that was theoretically available for payment as support.
 

 The judgment must be reversed, and the cause remanded for a redetermination of the support order. This appeal also raises subsidiary issues concerning sanctions and attorney fees, with which we also deal below.
 

 Facts
 

 Michael P. Schulze is a high school graduate who has been able to earn a very good living working for his parents’ manufacturing company. Michael
 
 *523
 
 went to work for the family business when he was 18. In 1983, at 22, he married Andrea. They had three children, who are now about twelve, nine and six. He separated from Andrea in April 1992, and their dissolution came to trial in January 1994. The trial revealed that Michael had been compensated handsomely in the late 1980’s and early 1990’s as a vice-president in charge of sales, regularly earning in excess of $100,000. In 1991, the year before the separation, Michael’s compensation exceeded $160,000. In the four years prior to the date of separation his income averaged $133,000.
 

 Despite the recession, Michael’s parents’ company increased its sales from 1991 to 1992, and increased them again in 1993. Even so, in 1992—the year of the separation—Michael’s salary was reduced because his parents decided to distribute 49 percent of the company to their three children. As it turned out, however, only Michael’s brother and sister received any stock. Michael received none because Andrea would not sign an agreement confirming Michael’s share of the stock to be his separate property. Because Michael was without stock, dividend money that would otherwise go out in direct compensation to Michael and his brother and sister was diverted to dividends to just his brother and sister. By 1993, Michael was grossing about $80,000.
 

 The trial judge used Michael’s actual pretax monthly income of $6,628 to calculate family support. However, in addition to Michael’s actual earnings, the judge included two items of imputed income.
 

 First, the judge added $600 to Michael’s income because of a rental subsidy. After separation, Michael had been sleeping on the couch in his parents’ home. So in 1993 his mother purchased a $250,000 condominium for him to live in. She charged him rent of $800 per month; the judge found the fair rental value was $1,400, and added in the $600 difference as “nontaxable” income.
 

 Second, the judge added $500 to Michael’s income for the use of a company car. Specifically, Michael had the use of a 1989 Mercedes as a company car, the fair rental value of which was determined to be $500 a month. Like the $600 rental subsidy, the $500 was characterized as “nontaxable” income, meaning that neither figure increased Michael’s tax liability for purposes of calculating his
 
 net
 
 income.
 

 The numbers were crunched in the DissoMaster.
 
 [2]
 
 The judge entered $6,628 as Michael’s “wages and salary”—his actual, albeit comparatively
 
 *524
 
 depressed, earnings from his parent’s company.
 
 [3]
 
 The judge next entered $1,100 (i.e., $600 for the condo, $500 for the car) on a line entitled “other nontaxable.” Michael was given credit for spending 20 percent of his time with the children. The judge also included $271 as child care expenses which Andrea would incur.
 

 Based on these numbers, the DissoMaster produced a “guideline” result of $2,713 in total child support for the three children (an average of $904 per child), plus $914 as “guideline” spousal support. The $914 figure was based on using Santa Clara County guidelines for
 
 temporary
 
 support.
 

 Under the guideline results, Michael’s taxes were calculated to be $2,019. The bottom line was that Michael was to pay $3,626 in combined child and spousal support.
 
 [4]
 
 He was assumed to have $5,709 after taxes ($6,628 in wages plus $1,100 in “nontaxable” income minus $2,019 in taxes equals $5,709) and, after paying the support, would have $2,083 left.
 

 
 *525
 
 But the DissoMaster was not content to leave it there. The deductability of spousal and unallocated family support in the tax laws offers the promise of increasing a support order while at the same time increasing the amount the paying parent has left. So, on top of the $3,626 guideline figure, the program proposed that Michael pay an
 
 additional
 
 $1,152 in family support for a total of $4,778. The program noted that, assuming Michael were allowed to deduct the entire kit and caboodle of his combined support payments—by calling it unallocated family support—his taxes would decrease from $2,019 to $568 and, instead of having $2,083 left after taxes and support, he would have $2,382 left. (That is, $6,628 in wages plus $1,100 in “nontaxable” income equals $7,728; $568 in taxes from $7,728 equals $7,160; $4,778 in combined support from $7,160 equals $2,382.)
 

 And so the family court judge made an order for $4,780, which, as we have indicated, works out to more than 83 percent of Michael’s after-tax income. ($4,780 divided by $5,709 equals .837.)
 

 Discussion
 

 Using the Temporary Spousal Support Figure to Establish the Permanent Support Order Was Error
 

 The purpose of temporary spousal support is to maintain the status quo as much as possible pending trial.
 
 (In re Marriage of Olson
 
 (1993) 14 Cal.App.4th 1, 5-6, fn. 3 [17 Cal.Rptr.2d 480];
 
 In re Marriage of Winter
 
 (1992) 7 Cal.App.4th 1926, 1932 [10 Cal.Rptr.2d 225] [“temporary spousal support ‘is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations’ ”].) By contrast, permanent spousal support is supposed to reflect a complex variety of factors established by statute and legislatively committed to the trial judge’s discretion, including several factors which tend to favor reduced support, such as the “goal” that the supported spouse should become self-supporting within a reasonable period of time. (See § 4320, subd. (k).)
 

 Furthermore, not only are the legal bases for the two kinds of support different, there is also a disparity in practice. Because dissolution of marriage is, in the mathematical sense, a negative-sum game where each party will not have the same access to the whole of the marital property he or she had during the marriage, permanent support orders will usually be lower than temporary orders.
 

 In light of the different legal purposes for each kind of support order and the reality that temporary support will tend to be higher than permanent
 
 *526
 
 support,
 
 In re Marriage of Olson, supra,
 
 14 Cal.App.4th 1, specifically warned against using temporary spousal support guidelines in a computer program assigned the task of determining permanent support. After noting the absence of legal authority to use a computer program for even temporary support unless they incorporate guidelines adapted by local court rule, Justice King, writing for the
 
 Olson
 
 court, observed: “An even greater danger is that the trial judge may use the results from a computer program designed for temporary spousal support to determine permanent spousal support. The purposes of temporary and permanent support are vastly different ....
 
 For this reason, using a computer program based on the court’s guidelines for temporary spousal support is inappropriate for fixing permanent spousal
 
 support.”
 
 (Id.
 
 at pp. 5-6 fh. 3, italics added.) Permanent spousal support, noted the
 
 Olson
 
 court, cannot be reduced to a computer program, because permanent support must be “fixed only after consideration of the applicable” statutory factors.
 
 (Ibid.)
 

 In supplemental briefing on the issue, Andrea recognizes that it would have been error for the trial judge to base a permanent spousal support order on guidelines used for temporary support, but contends that the court actually based its order on the statutory factors bearing on permanent support, not the temporary guidelines contained in the DissoMaster program. In essence, she claims the fact that the spousal support component of the permanent family support order was virtually the same number as the DissoMaster number for temporary support was mere coincidence. In that regard she points out the judgment mentions several of the section 4320 factors, in particular the high standard of living of the parties prior to dissolution.
 
 [5]
 

 We do not think, however, that “coincidence” can explain the uncanny closeness of a permanent spousal support order with a proposed DissoMaster temporary support order in any case where the record does not show that the trial judge arrived at the permanent figure from the ground up rather than using the temporary figure as a kind of baseline or “lodestar.” Section 4320 requires an independent evaluation of
 
 all
 
 of a variety of specifically enumerated factors. If the trial judge
 
 begins
 
 with the proposed temporary figure and
 
 *527
 
 then makes adjustments (or merely uses some of the section 4320 factors to
 
 justify
 
 a figure based on the temporary order), the ultimate order is not
 
 really
 
 the product of a truly independent exercise of judicial discretion.
 

 Moreover, there is a subtle upward bias built into the DissoMaster when it is used to determine permanent spousal support. By casually introducing the assumption that spousal support may
 
 permissibly
 
 be such and such (again, even though based on
 
 temporary
 
 county guidelines), and
 
 then
 
 showing how both parties can do better than
 
 that
 
 figure with .an even
 
 higher
 
 figure characterized as deductible unallocated family support, the judge and litigants may never realize that the spousal support component of this “unallocated” family support is significantly higher than the trial judge would award if he or she were making the award directly from the statutory factors set forth in section 4320. The process is analogous to the difference between using last year’s budget or a “zero-based” budget. The former unavoidably incorporates the assumption that last year’s spending was acceptable; the latter forces the decisionmaker to reexamine basic assumptions. While the former may sometimes be necessary as a practical matter in business or government, section 4320 clearly contemplates a ground-up examination of the need for and appropriate level of permanent spousal support, rather than
 
 beginning
 
 with a figure pegged to a proposed temporary support order.
 

 That was the error in the present case, which resulted in a bottom line payment of what can only be termed a confiscatory percentage of Michael’s after-tax income.
 
 [6]
 
 The family support order of $4,780 is almost
 
 exactly
 
 what the Dissomaster proposed ($4,778), save for a paltry $2 difference obviously resulting from rounding. Even if some of the section 4320 factors were mentioned in the ruling, there is absolutely nothing to indicate that the permanent support order was arrived at
 
 independently
 
 of the influence of a figure never intended to be used for permanent support orders. Moreover, if mere recitation of a few of the section 4320 factors could legitimize a permanent award obviously based on the DissoMaster temporary support
 
 *528
 
 proposal, section 4320 would become a dead letter. Instead of being forced to face the hard issues posed by the statutory spousal support factors in the context of what is left after a relatively fixed child support obligation has been paid, a trial judge need merely use the DissoMaster number and then recite a few of the section 4320 factors as window dressing.
 

 Because it is clear that, at best, the trial judge here used the $914 spousal support figure as a benchmark and did not arrive at spousal support independently, the family award must be reversed to that extent and the cause remanded for the establishment of a spousal support component based, from the ground up, on the section 4320 factors.
 

 Inclusion of the Value of the Company Car and Employer-furnished Rent Subsidy Into the Child Support Calculation Was Not Error, But Characterization of Those Benefits as “Nontaxable” Was
 

 Before we can explain why ascribing the $1,100 for the rent subsidy on the condo and the company car as “nontaxable” was error, we must explain why including them into the calculation at all was not error, contrary to Michael’s position in this appeal.
 

 In
 
 In re Marriage of Whealon
 
 (1997) 53 Cal.App.4th 132, 144 [61 Cal.Rptr.2d 559], this court observed that California child support law is now “redolent of the flavor of the Internal Revenue Code, complete with definitions of income and allowances for deductions.”
 
 [7]
 
 Thus, Family Code section 4058, subdivision (a)(3) defines “income” to include “employee benefits . . . taking into consideration . . . any corresponding reduction in living expenses.”
 

 Of the two items, the car and the condo, the car presents by far the easier problem. The $500 value for the Mercedes is, on its face, an employee benefit reducing Michael’s living expenses.
 

 The $600 rent reduction requires a little more analysis. Not even the IRS would be so prehensile as to claim that a
 
 parent’s
 
 allowing an adult child to live in a condominium owned by the parent represented taxable income to the child, at least under ordinary circumstances.
 
 [8]
 

 The problem here is that the circumstances are not ordinary. Michael’s parents are also his
 
 employers,
 
 and the imputation of the free rent may be upheld as compensation from those employers.
 

 
 *529
 
 The trial judge was unimpressed with the maneuver of trying to reduce Michael’s income during the pendency of his divorce by distributing stock to the children, and made an implied finding that the value of the rent reduction represented
 
 compensation
 
 for his services as sales vice president, not a gift from parent to child. (Cf. Int.Rev. Code, §119 [implying that value of lodgings furnished employee is income when
 
 not
 
 furnished for the convenience of the employer].)
 

 Substantial evidence supported that finding. There was evidence of a precipitous drop in Michael’s actual income between 1991 and 1992 (the year of separation), yet Michael’s employer’s sales were increasing during the same period. The reasonable inference from such facts—especially in light of the suspicious timing of the stock distribution—is that Michael’s employers were trying to distribute what they had previously paid him straightforwardly into a form of income that would be less visible to the radar of the family law court. It is irrelevant that the tactic did not work. The rent and car still represented
 
 employment
 
 benefits, not merely a helping hand from parents seeking to cushion a child who was going through a divorce.
 

 The addition of imputed income based on the condominium and the Mercedes, however, created a problem of its own which the trial court erred in not correcting. The trial judge characterized the imputed income as “nontaxable,” but such a characterization runs counter to the inclusion of the items as “income” within section 4058 in the first place. Section 4058 does not mention gifts or other “freebies” that come one’s way in life: The operative language in subdivision (a), i.e., “annual gross income . . . means income from whatever source derived,” was lifted straight from the definition of income in section 61 of the Internal Revenue Code. The only “benefits” which are mentioned in section 4058 are
 
 employee
 
 or
 
 self-employment
 
 benefits. (See § 4058, subd. (a)(3).) If the Mercedes and the condo were truly “nontaxable,” it would be because they were
 
 gifts
 
 to Michael from his parents, not a form of compensation. Gifts are not mentioned in section 4058, and, judging from the use of language lifted straight from the Internal Revenue Code, should logically be outside the purview of the child support statute.
 
 [9]
 
 Gross income, in federal tax law, does not include gifts. (See generally, Int.Rev. Code, §§ 61, 102(a); see, e.g.,
 
 Commissioner
 
 v.
 
 Duberstein
 
 (1960) 363 U.S. 278, 285 [80 S.Ct. 1190, 4 L.Ed.2d 1218];
 
 Bogardus
 
 v.
 
 *530
 

 Commissioner
 
 (1937) 302 U.S. 34, 43 [58 S.Ct. 61, 65-66, 82 L.Ed. 32];
 
 U.S.
 
 v.
 
 Harris
 
 (7th Cir. 1991) 942 F.2d 1125, 1128.)
 
 [10]
 

 Given that the imputed income from the car and the condo was only includable as income by virtue of an implied finding that they were “employee benefits,” the trial court should have included, in calculating family support, the extra income tax that Michael would have had to pay on it. The state uniform guideline set out in section 4055 speaks in terms of the high earner’s “net monthly disposable income,” and section 4059, subdivision (a) states that “[t]he state and federal income tax liability resulting from the parties’ taxable income”
 
 shall
 
 be deducted from each parent’s annual gross income. The case must therefore be returned for a recalculation, in which the extra tax liability that would result from the inclusion of the Mercedes and the condo are factored in.
 
 [11]
 

 There Was No Permissible Basis for the $5,000 Sanction, Nor Was There Any Basis to Require the $7,500 Attorney Fee Order Be Paid All at Once
 

 Michael next challenges an attorney fee award totaling $12,500, $5,000 of which was imposed specifically as a sanction for having frustrated possible earlier settlement of the case. The judge allowed Michael to pay the $5,000 off in $500 monthly installments; the $7,500 balance was payable in full “forthwith.”
 

 Michael now claims there is insufficient evidence of ability to pay both awards. He further argues that the $5,000 sanctions order represents an
 
 *531
 
 abuse of discretion, both because it was based on a lack of evidence that Michael had done anything to frustrate settlement, and because there was not appropriate notice of the possibility of a sanction award.
 

 We first consider the $5,000 sanctions order, which is the simpler of the two contentions. In her respondent’s brief, Andrea points to nothing which supports the idea that Michael frustrated settlement. She merely quotes section 271 (basic authorization allowing family law court to impose attorney fee order as sanction), says Michael had adequate notice because he might have filed objections to the judgment, and argues that the disparity of income would have justified the award anyway, because her total fees at time of trial were $15,500 and she had no income.
 

 From our vantage point, it appears that the sanction order was the result of the trial judge’s understandable lack of sympathy for the last-minute estate planning on the part of Michael’s parents which produced a precipitous drop in his income at just the moment when he was separating from his wife and in a year in which company sales were increasing. Michael was not well served by that bright idea, which no doubt appeared too transparent by half.
 

 However, Andrea points to no evidence that the distribution of 49 percent of the stock of the parents’ company was at
 
 Michael’s
 
 instigation. For all the record shows, it might have been his parents’ clever—but unilateral— attempt to help him in his divorce. Lacking the predicate of a showing of frustration, the $5,000 award must be reversed. Nor can the award be saved because the trial court might have made a $12,500 fee order simply on the basis of need and ability to pay. The trial court imposed that award as a sanction and it can therefore only be upheld as a sanction. Accordingly, we need not address the notice issue.
 

 This leaves the order to pay $7,500 “forthwith.” The $7,500 figure itself is unassailable. As an attorney fee award for a stay-at-home parent in Orange County against a breadwinner who during the marriage earned well in excess of $100,000 a year, and in which there was a serious issue of imputed income, $7,500 is more than reasonable.
 

 But the order that the $7,500 be paid
 
 forthwith
 
 is a different story. It is undisputed that neither party had any savings or liquid assets; Michael’s parents had lent him about $8,000 to pay his own fees.
 

 The family support order left Michael with less than $2,000 a month in actual cash. It is clear the trial judge presumed Michael would be able to obtain the $7,500 from his parents. This presumption was error. (See § 270
 
 *532
 
 [necessity that court first determine that a party has or is reasonably likely to have the ability to pay before he or she may be ordered to pay attorney fees].) Charity, once extended, is still not an entitlement. Parents are not obligated to pay the costs of their children’s divorces. Nothing showed that Michael had, or was reasonably likely to have, the “ability to pay” the $7,500 forthwith except the notion that Michael’s parents’ generosity could be taken for granted. In light of the absence of any liquid assets, it was unreasonable not to have allowed Michael to pay the $7,500 attorney fee order in manageable installments, consistent with the income he had left after he paid the family support order.
 

 Disposition
 

 The judgment is reversed to the extent that the family support award incorporates $914 in permanent spousal support because that $914 was not based on the section 4320 factors, but on the DissoMaster proposal for temporary support. The judgment is also reversed to the extent that child support was calculated without taking into consideration the taxability of the $1,100 of imputed income based on employee benefits. The judgment is further reversed to the extent that it requires Michael to pay $5,000 in sanctions and to the extent that it requires Michael to pay $7,500 in attorney fees in a lump sum rather than in manageable installments. In all other respects it is affirmed. We now remand the matter back to the family law court to modify the judgment based on the following directions:
 

 —Recalculate family support so that the spousal support component is established from the ground up based on the section 4320 factors.
 
 [12]
 

 —Recalculate the family support award to take into account the extra tax liability that would ordinarily accompany the $1,100 of imputed income.
 

 
 *533
 
 —Omit any obligation on Michael’s part to pay $5,000 in attorney fees as sanctions.
 

 —Provide that Michael’s obligation to pay $7,500 in attorney fees may be paid in manageable installments consistent with Michael’s actual income, not his parents’.
 
 [13]
 

 In light of the time which has passed since the notice of appeal, our decision may result in credits or offsets depending on what has been paid in the interim. The new judgment should also provide for any such credits and offsets.
 

 Finally, it is clear that this is
 
 not
 
 a frivolous appeal, and there is no basis on which to award Andrea her attorney fees on appeal as a matter of
 
 appellate
 
 law. (E.g., Code Civ. Proc., § 907.) Andrea still, however, may have a claim for her appellate fees, or some portion of them, as a matter of
 
 family law
 
 in light of the disparity of incomes between the two parties. (E.g., § 2030, subd. (a).) Rather than attempt to foreclose the matter prematurely, we simply state that our opinion is without prejudice to Andrea to bring whatever additional proceedings for her attorney fees on appeal as she believes appropriate, and without prejudice to Michael to assert whatever defenses to those proceedings that he believes are appropriate.
 

 In the interests of justice, each party will bear his or her own costs on appeal.
 

 Wallin, J., and Bedsworth, J., concurred.
 

 [1]
 

 All statutory references in this opinion are to the Family Code, unless otherwise specifically indicated.
 

 [2]
 

 The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by section 4055, which involves, literally, an algebraic
 
 *524
 
 formula. The complexity of California’s child support scheme has been the subject of considerable judicial criticism. (E.g.,
 
 County of Tulare
 
 v.
 
 Campbell
 
 (1996) 50 Cal.App.4th 847, 851, fn. 2 [57 Cal.Rptr.2d 902];
 
 In re Marriage of Carter, supra,
 
 26 Cal.App.4th at pp. 1028-1029, fn. 5;
 
 In re Marriage of Fini
 
 (1994) 26 Cal.App.4th 1033, 1040-1044 [31 Cal.Rptr.2d 749].) We need not repeat here what has been said with considerable eloquence by Justice King, particularly in regard to the need for any child support system, for the sake of its own political legitimacy, to be comprehensible to, and perceived as fair by, the litigants involved. (See
 
 Fini, supra,
 
 26 Cal.App.4th at pp. 1040-1041.) As we have noted, the algebraically based computation method has been likened to something out of Alice in Wonderland. Actually, it is worse than that. The system is a kind of hybrid of quantum physics and Zen philosophy. Support is calculated on after-tax income, but after-tax income may be
 
 itself
 
 affected by the support order! Thus, in a manner reminiscent of an attempt to pin down an electron or the image of a snake eating its own tail, the nooks and crannies of the computer program involved in this case contain sophisticated feedback loops which seek, in essence, to continually adjust for the tax effects of a given order, but at the same time formulate an order in light of those same tax effects. The complexity is compounded because not only does every child support calculation in California now require the parties to do their tax returns (a fiendishly complicated process by itself), but on top of the tax computations an algebraic formula must be applied to the result. For a judge trying to manually apply the law, it would be like taking an algebra exam after doing somebody else’s tax returns.
 

 [3]
 

 There is a growing body of case law centering on when a supporting parent’s “earning capacity,” as distinct from what the parent actually earns, may be used to increase child support. (E.g.,
 
 In re Marriage of Padilla
 
 (1995) 38 Cal.App.4th 1212 [45 Cal.Rptr.2d 555];
 
 In re Marriage of Regnery
 
 (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243].) In essence, Michael prevailed on the “earning capacity” issue in this case because the family law judge only punched in Michael’s actual wages on the “wages and salary” line of the DissoMaster, not some higher figure based on what Michael might earn if his parents were to continue paying him at preseparation levels. Andrea has not challenged the trial court’s use of Michael’s actual wages in an appeal of her own. Accordingly, we are spared the need to consider any “capacity” issue in this case.
 

 [4]
 

 The DissoMaster obviously does its own rounding. The figures it yielded for child support were $136 child care expenses and $2,577 in straight child support, plus $914 in guideline spousal support. $136 + $2,577 + $914 = $3,627, not $3,626.
 

 [5]
 

 Andrea’s counsel also argues that there are times when using a computer program may be thoroughly consonant with a trial judge’s discretion under section 4320, citing
 
 In re Marriage of Olson, supra,
 
 14 Cal.App.4th 1. The
 
 Olson
 
 court ruled that there was no abuse of discretion under section 4320 where, because of the fluctuating nature of each party’s income, the trial judge ordered a special master to determine spousal support by means of the standard DissoMaster default program. In doing so, however, the
 
 Olson
 
 court stressed the special circumstances of the fluctuating income and the fact that there was “no indication that the trial court used this computer program as a substitute for judicial discretion or in lieu of considering the factors prescribed” by statute. (See
 
 Olson, supra,
 
 14 Cal.App.4th at pp. 8-9.) In the present case, by contrast, there was no problem of fluctuating monthly income and consequently no need to resort to a computer program to solve that problem.
 

 [6]
 

 Justice King has noted that in the real world there has been a de facto trade-off between child support and spousal support with the enactment of the state uniform guidelines for child support. See
 
 In re Marriage of Fini, supra,
 
 26 Cal.App.4th at page 1043: “Given the significant increase in the proportion of the payor’s income now ordered for child support, the Legislature has virtually eliminated orders for spousal support in all but higher income cases, if the parties have minor children. Although this was unintended and probably never contemplated by the Legislature, the fact is that after the order for the amount payable as child support the payor simply does not have sufficient income left to permit spousal support to be ordered paid.”
 

 The instant case represents the converse of the problem spotted by Justice King: the danger, in a higher income case, of a too high permanent spousal support order when it is based on guidelines developed for a different context.
 

 [7]
 

 We were not the first court to make the observation. In
 
 In re Marriage of Fini, supra,
 
 26 Cal.App.4th at page 1042, the court observed: “The Legislature has adopted a detailed and relatively inflexible child support statutory scheme much akin to the Internal Revenue Code.”
 

 [8]
 

 The issue is more likely to be whether the parent could claim the child as a dependent.
 

 [9]
 

 The criminal child-neglect statute, Penal Code section 270, in contrast to section 4058, specifically mentions “gifts" as within “income” for purposes of determining a parent’s ability to support his or her child.
 

 [10]
 

 We decline Michael’s invitation to explore further the nature of parental gifts to adult children who themselves have their own support obligations. The really tough case—which may be safely left for another day—would be that of the scion of a wealthy family whose parents are
 
 not
 
 his or her employers and who still manages to live quite well even on a low annual gross income as defined by section 4058 because of bona fide nontaxable
 
 gifts
 
 from his or her parents, and where there is no issue of criminal child neglect under Penal Code section 270. Because the record here is susceptible of the finding that the condominium subsidy and the use of the Mercedes were both
 
 employment
 
 perquisites and therefore
 
 within
 
 section 4058, we are spared the problem of whether they still might be used as factors to increase support even if they were gifts
 
 outside
 
 section 4058. (Cf.
 
 Stewart
 
 v.
 
 Gomez
 
 (1996) 47 Cal.App.4th 1748, 1754-1755 [55 Cal.Rptr.2d 531] [rent-free housing afforded disabled carpenter on Indian reservation held to be within section 4058].)
 

 [11]
 

 We do not know that Michael included the additional income represented by the condo and Mercedes on his tax returns. Intuitively, one would guess that he probably didn’t. On the other hand, the logical implication from the trial court’s decision and our opinion today is that he should have.
 

 Perhaps Michael still might prevail with the IRS and demonstrate that the condo and Mercedes are really bona fide gifts from his parents, as distinct from compensation by other means from his employers. (See
 
 Commissioner
 
 v.
 
 Duberstein, supra,
 
 363 U.S. at p. 285 [80 S.Ct. at pp. 1196-1197].) For purposes of
 
 this
 
 appeal on
 
 this
 
 record, however, we may say that the substance of the two items is that they are compensation.
 

 [12]
 

 We recognize this task is easier stated than accomplished, because of the interrelationship between after-tax income and the deductability of family support. We do not mean to discourage the judge from using a computer program. He simply should avoid beginning with the proposed DissoMaster figure for temporary support in figuring the spousal support component of any permanent family support order. There is no reason he cannot plug his own spousal support number into the DissoMaster to see what will happen if it becomes part of a deductible family support order.
 

 We also recognize that even after a reevaluation of the spousal support component pursuant to this decision Michael will still end up paying a very high percentage of his after-tax income in total support, if only because of the high child support levels mandated by the section 4055 guideline. Michael has not argued that the trial judge should have used his discretion under section 4057, subdivision (b) to reduce those levels (see § 4057, subd. (b)(3) [amount under formula exceeds needs of the children because of extrordinarily high income] or 4057, subd. (b)(5) [application of formula would be unjust due to special circumstances in the particular case]), and so we do not address the child support component of the judgment in this opinion.
 

 [13]
 

 It is possible that this aspect of the new judgment may be moot if, indeed, Michael’s parents did lend him the money to pay the order and he has already paid it. However, the parties have not informed us of any such development, so we have no choice but to adjudicate the issue.