Filed 12/2/13  Marriage of Breen CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of NORMAN PAUL and DEBERAH L. BREEN. | D062502 |
| NORMAN PAUL BREEN, | |
| Appellant, | (Super. Ct. No. D515906) |
| v. | |
| DEBERAH L. BREEN, | |
| Respondent. | |

APPEAL from a judgment and order of the Superior Court of San Diego County,

Lorna A. Alksne and Maureen F. Hallahan, Judges.  Affirmed.

Norman Paul Breen, in pro. per., for Appellant.

Deberah L. Breen, in pro. per., for Respondent.

The trial court entered a judgment denying a motion filed by Norman Paul Breen

(Husband) to reduce the amount of spousal support payable to his former wife Deberah

L. Breen (Wife) and a subsequent order granting in part Husband's motion to reduce the

amount of spousal support payable to Wife. The court also awarded Wife attorney fees incurred in defending those motions. Husband appeals, contending the court abused its discretion in: (1) determining his current income; (2) setting spousal support at an amount greater than his current income allowed; and (3) awarding Wife attorney fees based on its erroneous determinations of his current income and without considering the effect of Wife's bankruptcy discharge of a debt owed her former attorney. We are not persuaded by Husband's contentions.

## FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife married in 1975 and separated in 2009. At the time of their separation, they had one adult child and one 17-year-old child. In July 2009, the trial court awarded Wife temporary spousal support of $3,500 per month.[1]

In November 2010, Husband filed an order to show cause (OSC), requesting his temporary spousal support obligation be reduced from $3,500 to $2,500, or less, per month. In support of his OSC, Husband filed an income and expense declaration (IED), stating that he was self-employed as an attorney, working as an independent contractor for a law firm, and attached photocopies of certain checks issued to him by that firm during the period September 13, 2010, through November 1, 2010. In January 2011, Husband filed another IED, stating he had last filed income tax returns for 2009 and setting forth his monthly income during 2010 on an attachment (showing income that

---

[1] Although the record on appeal does not contain a copy of Wife's petition for dissolution of marriage, we presume a dissolution petition was filed and resulted in the subsequent orders for temporary and permanent spousal support.

ranged from $7,481 to $19,773 per month). In March 2011, he filed another IED, restating the income information from his January IED and attaching copies of portions of his 2009 federal income tax return. In his trial brief, Husband discussed each of the Family Code[2] section 4320 factors a court must consider in establishing spousal support.

On March 11 and 17, 2011, the trial court (San Diego County Superior Court Judge Lorna A. Alksne) held an evidentiary hearing on Husband's OSC. On March 21, 2011, the court heard closing arguments and stated its findings and order on the record. The court stated it had considered all the section 4320 factors. The parties' marital standard of living was $12,000 per month. The court found Husband had the ability to pay spousal support and was earning between $11,000 and $13,000 per month. It stated Husband "has very good marketable skills as a successful trial attorney." It ordered Husband to pay Wife spousal support of $3,500 per month. It also ordered him to pay Wife's attorney $5,000 in attorney fees at a rate of $500 per month. The court directed Wife's attorney to prepare the judgment and submit it to Husband for his signature. The court granted Wife's dissolution petition effective as of that date (i.e., March 21, 2011). The court's minutes reflect that the court granted the judgment of dissolution effective March 21, 2011.

In June 2011, Husband filed a declaration in support of his proposed judgment, stating he and Wife's attorney could not agree on the form of judgment and submitting

---

2      All statutory references are to the Family Code.

3

their respective versions of the judgment to the court for it to decide and sign. The record on appeal does not show any action taken by the court on that request during 2011.

In February 2012, Husband filed a second OSC, requesting that his spousal support obligation be reduced from $3,500 per month. He asserted he was not able to pay more than $1,000 per month in spousal support. He stated his average monthly income during 2011 was $8,955.71, but was only $7,257.92 over the past six months because of reduced legal work. Husband also requested that the court choose one of the two versions of the 2011 judgment to sign and enter because no judgment had yet been entered. In support of his OSC, Husband filed an IED with an attachment stating his 2011 income was $107,468.50 and itemizing his monthly income from August 2011 through January 2012.

Wife filed a responsive declaration, opposing Husband's OSC to modify spousal support and requesting an order directing him to pay the $3,000 amount remaining of the attorney fees awarded her in 2011. In April 2012, Husband filed a declaration stating his gross income in February 2012 was $4,389 and in March was $4,920.

On April 11, 2012, the trial court (San Diego County Superior Court Judge Maureen F. Hallahan) held a hearing on Husband's second OSC. The court chose Wife's version of the proposed 2011 judgment with one modification (regarding the amount of the spousal support arrearages) and stated it would enter that judgment. Husband stated he did not take an appeal from the court's action in 2011 because there was no "actual judgment entered yet." He therefore requested the court enter that judgment as of April 11, 2012, rather than nunc pro tunc to allow him to appeal that judgment. The court

4

stated it was entering the judgment, which was taken and put on the record on March 21, 2011.[3] It informed Husband that his "rights are your rights with respect to an appeal. I can't advise you on that."

On the issue of spousal support, the court found there had been a significant change of circumstances regarding Husband's earnings. Rather than considering the matter on a month-to-month basis, the court considered the matter overall and found all of the court's findings in 2011 to be the same except for Husband's earnings. The court looked at Husband's earnings for the prior year (i.e., 2011), which were about $9,000 per month. The court reduced Husband's spousal support obligation from $3,500 to $2,800 per month. The court then continued the hearing for consideration of the remaining issues.

On May 29, 2012, the trial court resumed the hearing and determined that Husband's spousal support arrears obligation to Wife was $28,832.52 as of April 30, 2012, found Husband still owed Wife $3,000 for attorney fees from the 2011 award, and awarded Wife an additional $1,500 for attorney fees. The court found the total net amount that Husband owed Wife was $39,560.86.

On June 12, 2012, the court issued written findings and an order after hearing (First Order), setting forth its findings and order from the April 11, 2012, hearing. In reducing Husband's spousal support obligation to $2,800 per month, the court stated it

---

3      The court's minutes state: "[Husband's] motion for the Entry of Judgment is **granted in part**. The Court enters the judgment today (nunc pro tunc to 3/21/11) with the exception of the arrears amount (through 2/28/11)."

had considered the section 4320 factors and found his average monthly income during 2011 was $9,000 per month for work as an attorney and $300 per month from the sale of dolls. The First Order also stated: "4. The Court enters the Judgment submitted to Court by [Wife's] former counsel . . . with the exception of Section 13[,] which shall be amended in regards to the amount of spousal support arrears through February 28, 2011[,] to read '$16,030.21' and Section 13 shall state that these arrears shall be considered a debt in the division between the parties."[4]

Also on June 12, 2012, the court issued written findings and an order after hearing (Second Order), setting forth its findings and order from the May 29, 2012, hearing.

On August 8, 2012, Husband filed a notice of appeal appealing:

"1. Judgment after court trial, which Judgment may have been entered after a hearing on April 11, 2012, and which Judgment was modified or amended after a hearing on May 29, 2012. . . .

"2. Orders made at a hearing on April 11, 2012, and as recited in [the First Order]. . . .

"3. Orders made at a hearing on May 29, 2012, and as recited in [the Second Order]. . . ."[5]

---

[4]    The record on appeal does not contain any separate document entitled "Judgment," signed and entered by the trial court.

[5]    We deny Wife's request to augment the record on appeal with a report of a special master that recommended certain divisions of the parties' property and debts in their marital dissolution proceeding.

DISCUSSION

I

*Modification of Spousal Support Generally*

"[A]n order for spousal support must be based on the facts and circumstances existing at the time the order is made." (*In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 592.) On filing of a motion or OSC, a trial court may modify an order for spousal support. (§ 3651, subds. (a), (c); *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.) "Modification of a spousal support order may be made only on a showing of a material change in circumstances after the last order." (*Tydlaska*, at p. 575.) "The moving party bears the burden of establishing a material change of circumstances since the last order was made in order to obtain modification of the spousal support order. [Citations.] In determining whether a change of circumstances has occurred, the trial court is required to reconsider the same standards and criteria set forth in . . . section 4320 it considered in making the initial long-term order at the time of judgment and any subsequent modification order." (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 77-78, fn. omitted (*Stephenson*).) Section 4320 factors include the extent to which each party's earning capacity is sufficient to maintain the standard of living established during the marriage, taking into account the supported party's marketable skills and periods of unemployment; the supporting party's ability to pay spousal support; the parties' respective needs, obligations and assets, including their separate property; their ages and health; the duration of the marriage; and the supported spouse's ability to engage in gainful employment. (§ 4320, subds. (a)-(h); *Stephenson*, at p. 78.) The court must

7

also consider the "balance of the hardships" (§ 4320, subd. (k)) to the parties and "[a]ny other factors [it] determines are just and equitable." (*Id.,* subd. (n).) "Furthermore, the court does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and *apply* each applicable statutory factor in setting spousal support. [Citations.] Failure to do so is reversible error." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.)

"The trial court has broad discretion to decide whether to modify a spousal support order. [Citation.] On appeal, we review the trial court's modification decision for abuse of discretion. An abuse of discretion is shown only when, ' ". . . after calm and careful reflection upon the entire matter, it can fairly be said that no judge would reasonably make the same order under the same circumstances. [Citation.]" ' " (*In re Marriage of Tydlaska*, *supra*, 114 Cal.App.4th at p. 575.)

II

*First OSC to Modify Spousal Support*

Husband contends the trial court abused its discretion in denying his OSC requesting that his spousal support obligation be reduced from $3,500 per month to $2,500, or less, per month.[6] He argues the court erred in determining his current income

---

[6] As a preliminary matter, it is not entirely clear, based on the record on appeal, that Husband timely appealed the decision denying his OSC. In general, a notice of appeal must be filed no later than 180 days after entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1)(C).) However, it is unclear in this case on what date the judgment denying Husband's OSC was entered. At the March 21, 2011, hearing, the trial court ordered Husband to pay Wife spousal support of $3,500 per month and directed Wife's attorney to prepare the judgment and submit it to Husband for his signature. Thereafter, the parties

8

and setting spousal support at an amount (i.e., $3,500 per month) greater than his current income allowed.

Husband argues the trial court did not consider all of the section 4320 factors in setting the amount of his spousal support obligation. As discussed above, a trial court must consider all of the section 4320 factors when setting spousal support, whether initially or a subsequent modification thereof. (*Stephenson*, *supra*, 39 Cal.App.4th at pp. 77-78; *In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 132.) In this case, the trial court's minute order *expressly* states: "The Court has considered all the [section] 4320 factors." Furthermore, the reporter's transcript for the March 21, 2011, hearing includes many references to section 4320 factors, showing the court considered those factors. At that hearing, the court stated:

---

were unable to agree on the form of judgment and, in particular, the spousal support arrearages amount. No written judgment was entered in 2011. Instead, the matter was submitted to the trial court and at the April 11, 2012, hearing the court chose Wife's version of the proposed 2011 judgment with one modification (regarding the amount of the spousal support arrearages) and stated it would enter that judgment. The court's April 11, 2012, minutes state: "[Husband's] motion for the Entry of Judgment is **granted in part**. The Court enters the judgment today (nunc pro tunc to 3/21/11) with the exception of the arrears amount (through 2/28/11)." Based on this record, it is unclear whether the judgment was entered on March 21, 2011, or April 11, 2012. However, because the 2011 order directed Wife's attorney to prepare the form of judgment and submit it to Husband, that order presumably contemplated further action before a judgment was entered regarding Husband's spousal support obligation. That further action ultimately occurred on April 11, 2012, when the trial court chose Wife's version of the judgment, with modification regarding the spousal support arrearages amount. Therefore, for determining the timeliness of Husband's notice of appeal, the entry date of the judgment apparently was April 11, 2012, when the court chose the form of judgment and entered it, albeit nunc pro tunc to March 21, 2011. (Cf. *In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 685-686.) Accordingly, we presume Husband's August 8, 2012, notice of appeal was timely filed within 180 days of the entry of judgment.

"[Y]ou're going to have my findings as of the trial, okay, under the [section] 4320 factors, which I am required to do. [¶] So under support *the court has considered all the* [section] *4320 factors*. The court is going to find that this is an upper to upper middle class standard of living. $12,000 a month was the marital standard. [¶] The court, under [section] 4320[, subd.] (a), will find that . . . [¶] [Wife] does not have the earning capacity to maintain the marital standard of living. . . . [¶] The marketable skills. Obviously, [Husband] has very good marketable skills as a successful trial attorney. The wife in this case has music teacher skills and needs to continue to develop those skills. In this economy I'm not sure that music teacher is the most marketable skill at the moment, but you may want to see what other areas of teaching you can turn that into, and you might need to take some retraining. [¶] It's obvious that the wife's current earnings are impaired by her periods of unemployment that were more incurred during the marriage to full-time raise the children." (Italics added.)

The court further found Husband "has the ability to pay spousal support. He has a current income which is between 11- and 13,000 dollars a month, and that's the court's finding."

Based on this record, it is clear the trial court considered all of the section 4320 factors. Although it did not cite and discuss each factor set forth in section 4320, it expressly discussed many of them. We conclude the court implicitly considered each of the section 4320 factors in setting the amount of his spousal support obligation. We presume the trial court's order is correct, "and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Husband does not cite any case or other authority showing the court was required to expressly cite and discuss each section 4320 factor on the record before it could make a determination of his spousal support obligation.

Husband also asserts the trial court erred by finding his current income was $11,000 to $13,000 per month because he filed two IED's before the March 21, 2011,

10

hearing showing his average income was only about $9,000 per month. Husband's January 2011 IED stated he had last filed income tax returns for 2009 and set forth his monthly income during 2010 on an attachment (which showed income ranging from $7,481 to $19,773 per month). His March 2011 IED restated that income information and attached copies of portions of his 2009 federal income tax return. Schedule C to Husband's 2009 Form 1040 tax return shows his gross earnings from practicing law in 2009 were $162,056, an average of about $13,500 per month.[7] Furthermore, based on his attachment showing his 2010 income for each month, he earned an average income of about $11,300 per month during 2010 (per our mathematical calculations). There is substantial evidence for the trial court's finding that Husband's current income as of March 21, 2011, was between $11,000 and $13,000 per month. The court was *not* required to consider only his income for the past six months in determining his current income for purposes of setting spousal support. Rather, a court may reasonably consider a longer period of time in determining current income, especially as in this case when the supporting spouse's income has varied considerably over that longer period of time and the court determines the most recent monthly income amounts may not accurately reflect what that spouse's income will be in the future. In the circumstances of this case, we conclude the court did not abuse its discretion by considering Husband's 2010 income along with his monthly income for January and February 2011 (i.e., $10,323 and $7,364)

---

[7]     Husband's IED's did not attach a copy of his entire Form 1040. We, like the trial court, must base Husband's gross earnings for 2009 on those portions provided, as well as any other relevant information pertaining to that year.

11

in determining his current income and ability to pay spousal support.[8] To the extent Husband argues there was substantial evidence to support a finding his current income was only $9,000 per month at that time, he misconstrues and/or misapplies the applicable standard of review.

The record supports an inference that the trial court considered whether to impute income to Wife when it discussed her employment history and chances of obtaining employment in her field (i.e., teaching music). The court stated Wife needs to continue to develop music teaching skills and may need some retraining in the current economy. The court also noted Wife's current earnings are impaired by her periods of unemployment during the marriage when she raised their children. We do not conclude the court abused its discretion by not imputing current income to Wife in determining Husband's spousal support obligation.

Finally, Husband appears to argue the trial court abused its discretion by relying on a computer software program (i.e., DissoMaster) in determining the amount of his spousal support obligation. His entire argument on that issue is as follows: "Because the $3,500 figure had first been determined in July 2009 by using the DissoMaster guidelines for temporary support, the trial court could not rely on those guidelines when setting the amount of permanent support at trial in March 2011. (*In re Marriage of Zywiciel* (2000) 83 Cal.App.4th 1078, 1081-1082.)" However, in so arguing, Husband does not cite to the

_____

[8]    The record does not show the trial court relied on its prior findings in July 2009 in determining Husband's current income on March 21, 2011.

12

record on appeal showing the trial court did, in fact, rely on the DissoMaster guidelines. Furthermore, our independent review of the record does not support Husband's assertion. The fact the trial court set Husband's permanent spousal support obligation at the same amount as his temporary spousal support obligation (i.e., $3,500 per month) does not show it relied on the same computer program (i.e., DissoMaster) as it did in setting temporary spousal support. We conclude Husband has not carried his burden on appeal to show the trial court abused its discretion in denying his first OSC and setting his spousal support obligation at $3,500 per month.

III

*Second OSC to Modify Spousal Support*

Husband contends the trial court abused its discretion by denying his second OSC requesting that his permanent spousal support obligation be reduced from $3,500 per month. He argues the court erred in determining his current income and setting spousal support at an amount (i.e., $2,800 per month) greater than his current income allowed.

Husband argues the trial court did not consider all of the section 4320 factors in setting the amount of his spousal support obligation. As discussed above, a trial court must consider all of the section 4320 factors when setting spousal support, whether initially or a subsequent modification thereof. (*Stephenson*, *supra*, 39 Cal.App.4th at pp. 77-78; *In re Marriage of Lynn*, *supra*, 101 Cal.App.4th at p. 132.) On June 12, 2012, the court issued the First Order, setting forth its findings and order from the April 11, 2012 hearing. In reducing Husband's spousal support obligation from $3,500 to $2,800 per month, the court *expressly* stated it had considered the section 4320 factors and found

13

his average monthly income during 2011 was $9,000 per month for work as an attorney and $300 per month from the sale of dolls. Based on this record, we infer the trial court considered all of the section 4320 factors. Although it did not cite and discuss each factor set forth in section 4320, it expressly discussed many of them. We conclude the court implicitly considered each of the section 4320 factors in setting the amount of his spousal support obligation. We presume the trial court's order is correct, "and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at p. 1133.) Husband does not cite any case or other authority showing the court was required to expressly cite and discuss each section 4320 factor on the record before it could make a determination of his spousal support obligation.

Husband also argues the trial court erred by finding his current income at the time of the April 11, 2012, hearing was about $9,000 per month as an independent contract attorney and $300 per month from the sale of dolls. However, in support of his second OSC filed February 23, 2012, Husband submitted an attachment stating that his 2011 income from providing legal services was $107,468.50, which is about $8,900 per month. He also set forth the amounts of his legal services income for each of the six months immediately preceding that date (i.e., from August 2011 through January 2012), which ranged from $5,381.50 to $8,996.00.[9] At the April 11, 2012, hearing, the trial court

---

9      Five of those six months were in 2011 and were included in calculating his monthly income for 2011. His January 2012 income was $7,286.50.

14

stated: "I do find a lawyer, independent contractor, especially an independent contractor's income, varies from month to month, and you should not just take one month or, frankly, six months, but I am looking at what was earned last year [2011] with the hope and expectation [Husband] will continue to search out work, and there will be work for him. [¶] The court does [find] that [Husband's] self-employment income is $9,000 [per] month."

We conclude there is substantial evidence for the trial court's finding that Husband's current income from providing legal services as of April 11, 2012, was about $9,000 per month. The court was *not* required to consider only his income for the past six months (which averaged about $7,258 per month) in determining his current income for purposes of setting spousal support. Rather, a court may reasonably consider a longer period of time in determining current income, especially as in this case when the supporting spouse's income has varied considerably over that longer period of time and the court determines the most recent monthly income amounts may not accurately reflect what that spouse's income will be in the future. In the circumstances of this case, we conclude the court did not abuse its discretion by considering all of Husband's 2011 income along with his monthly income for January 2012 in determining his current income and ability to pay spousal support. To the extent Husband argues there was substantial evidence to support a finding his current income was only $7,200 or less per month at that time, he misconstrues and/or misapplies the applicable standard of review.

The record supports an inference that the trial court considered whether to impute income to Wife. Wife's attorney stated that she had submitted 526 job applications over

15

the past year. Although she had held seven jobs during that period, she was "laid off right away" from each one because of the fickle retail industry. Her attorney stated Wife continued to look for work. He argued she could not pursue teaching without first becoming recertified in Arizona and was not in a financial position to do so at that time. The trial court stated it was disappointed Wife was not able to obtain work. The record therefore shows the court did, in fact, consider whether to impute income to Wife, but implicitly decided not to do so. Husband has not carried his burden on appeal to persuade us the court abused its discretion by not imputing current income to Wife in determining his spousal support obligation.

Finally, Husband argues the trial court abused its discretion by relying on a computer software program (i.e., DissoMaster) in determining the amount of his spousal support obligation. "[I]t would constitute an abuse of discretion for the trial court simply to substitute the use of a computer program for the required consideration and appropriate weighing of the statutory factors." (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 9; see also *In re Marriage of Zywiciel, supra,* 83 Cal.App.4th at pp. 1081-1083.) Although neither the First Order nor the reporter's transcript for the April 11, 2012, hearing shows the court expressly considered the DissoMaster guidelines, the court's minutes for the April 11, 2012, hearing appear to support Husband's assertion that the court considered those guidelines. Attached to the April 11, 2012, minutes is a "DissoMaster Data Screen" dated April 11, 2012, showing proposed spousal support of $2,795. However, the fact the trial court considered the DissoMaster calculations in determining the amount of his spousal support does not show it "relied primarily, if not exclusively," on those

16

calculations. The fact the trial court reduced Husband's spousal support obligation to $2,800 per month, about the same amount as the DissoMaster program calculates for temporary spousal support obligation (i.e., $2,795 per month), does not show it relied primarily--or exclusively--on that computer program in determining his spousal support obligation.

Because of the fluctuating nature of Husband's income, the trial court did not abuse its discretion by considering the DissoMaster calculation, together with all of the section 4320 factors, in determining his spousal support obligation. (*In re Marriage of Olson*, *supra*, 14 Cal.App.4th at p. 9 [case involving fluctuating income, trial court did *not* use "computer program as a substitute for judicial discretion or in lieu of considering the [statutory] factors"]; cf. *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525-528 [case without fluctuating income, trial court abused its discretion by beginning with proposed DissoMaster amount and making adjustments thereto based on § 4320 factors].)[10] We conclude Husband has not carried his burden on appeal to show the trial court abused its discretion by denying his second OSC and setting his spousal support obligation at $2,800 per month.

---

[10]    To the extent *In re Marriage of Schulze*, *supra*, 60 Cal.App.4th 519, is factually similar to this case, we nevertheless are not persuaded by its reasoning and decline to apply its holding in the circumstances of this case.

17

IV

*$3,000 Remainder of Attorney Fees Award*

Husband contends the trial court erred by finding on May 29, 2012, that he still owed Wife $3,000 of the 2011 attorney fee award of $5,000 because the court initially erred in 2011 in determining his current income and in 2012 did not consider the effect of Wife's subsequent bankruptcy discharge of a debt owed her former attorney.

A

On March 21, 2011, the trial court ordered Husband to pay Wife's attorney (Neill Marangi) $5,000 in attorney fees at a rate of $500 per month. In opposition to Husband's second OSC in 2012, Wife filed a responsive declaration, requesting an order directing him to pay the unpaid $3,000 remaining amount of the $5,000 in attorney fees awarded her in 2011.

In reply, Husband filed a declaration arguing the 2011 award had been based on attorney fees Wife owed her former attorney, Julia Garwood, and Wife's current attorney was supposed to forward his $500 monthly payments to Garwood. Husband asserted that when Wife filed for bankruptcy in August 2011 and had her debt to Garwood discharged, he believed "the basis on which the attorneys' fees had been awarded no longer existed. That is why I stopped making those payments after August 2011." Husband filed another declaration asserting that Wife agreed with Garwood that she would instruct Marangi to forward to Garwood the attorney fee installment payments made by Husband to pay off the balance of $4,400 still owed her. He asserted he made four monthly payments of $500, which he understood would be used to pay attorney fees Wife still owed Garwood.

18

He asserted that when Wife filed for bankruptcy in August 2011, she listed her attorney fee debt to Garwood on Schedule F, which Husband lodged with the court. Husband asserted that "[b]ecause [Wife] was going to be discharged from having to pay the subject fees to Attorney Garwood, I did not believe that there was any need for me to pay the remaining $3,000 in attorneys' fees. For that reason, I did not make any $500 monthly payments of attorneys' fees after August 2011. [Wife] was then discharged in her bankruptcy in December 2011, including a discharge of the fees she owed to Attorney Garwood." Husband lodged with the court a copy of the agreement between Wife and Garwood, in which Wife agreed to pay Garwood $4,400 out of the $5,000 in attorney fees awarded to Wife on March 21, 2011, by having Marangi, her current attorney, forward Husband's installment payments to her up to $4,400.

In the Second Order, the trial court stated: "The Court GRANTS [Wife's] request to confirm that the remainder of the attorney fees and costs ordered to be paid by [Husband] at trial, totaling $3,000[,] is still owed by [Husband]."

B

Husband first argues the trial court abused its discretion by confirming he still owed Wife $3,000 of the original $5,000 attorney fee award in 2011 because that original award was based on the trial court's erroneous finding in 2011 that his current income was between $11,000 and $13,000 per month. However, because we concluded in section II above that the trial court did not err in determining Husband's current income on March 21, 2011, we likewise reject his challenge to the court's attorney fee award in 2011 based on that same income determination.

19

Husband also argues the trial court abused its discretion by confirming he still owed Wife $3,000 out of the original $5,000 attorney fee award because Wife's debt to Garwood had been discharged in her 2011 bankruptcy. However, assuming arguendo Wife had a debt of $4,400 to Garwood, her former attorney, for past legal services and that debt was discharged in bankruptcy in December 2011, that bankruptcy discharge did not, either directly or indirectly, affect Husband's obligation to pay Wife's current attorney, Marangi, $500 monthly payments toward the remaining $3,000 of the original $5,000 amount ordered by the trial court. On March 21, 2011, the trial court ordered Husband to pay Wife's current attorney, Marangi, $5,000 in attorney fees at a rate of $500 per month. Therefore, Husband owed Wife and/or her current attorney, Marangi, a total of $5,000 in attorney fees. Wife's subsequent bankruptcy discharge in December 2011 did not affect Husband's court-ordered obligation to pay attorney fees to her and/or her current attorney. There is nothing in the record on appeal to support Husband's apparent position that the 2011 order obligating him to pay $5,000 in attorney fees to Wife's current attorney, Marangi, had subsequently been modified by the court to require him to instead pay Wife's former attorney, Garwood, that amount (up to $4,400). To the extent Wife agreed with Garwood to have her current attorney forward Husband's $500 monthly payments to Garwood toward her $4,400 debt to Garwood, that agreement did not amend, modify, or otherwise absolve Husband of his court-ordered obligation to pay Wife attorney fees of $5,000 at a rate of $500 per month. We conclude the trial court correctly confirmed in the Second Order that Husband still owed Wife's current attorney

20

$3,000 out of the original $5,000 attorney fee award. Husband does not cite any apposite case or other authority persuading us to reach a contrary conclusion.

V

*$1,500 in New Attorney Fees*

Husband contends the trial court erred by awarding Wife $1,500 in attorney fees for opposing Husband's second OSC because it erred in determining his current income. In part III above, we concluded the trial court did not err in finding in April 2012 that Husband's current income from providing legal services was $9,000 per month. Therefore, to the extent Husband challenges the trial court's June 2012 award of $1,500 in new attorney fees based on that purported erroneous income determination, we likewise reject that challenge. To the extent Husband challenges the $1,500 award of attorney fees based on insufficient evidence to support the court's implicit finding he had the ability to pay for legal representation by both parties (see, e.g., § 3557, subd. (a)), he misconstrues and/or misapplies the applicable standard of review by citing only evidence favorable to his position and arguing the court should have reached a contrary result. Based on our review of the record, we conclude there is substantial evidence to support the trial court's finding Husband had the ability to pay for legal representation by both parties. Therefore, the court did not abuse its discretion by ordering Husband to pay Wife $1,500 in attorney fees.

## VI

### *Spousal Support Arrearages*

Husband finally contends the trial court erred in the Second Order by finding he owed $28,832.52 in spousal support arrearages because the amount of his spousal support obligation resulted from an erroneous determinations of his current income in March 2011 and April 2012. However, because we concluded in parts II and III above that the trial court did not abuse its discretion in March 2011 and April 2012 in determining Husband's current income on which its determinations of spousal support were predicated, in part, we likewise reject his challenge to its June 2012 calculation of spousal support arrearages based on those prior spousal support orders predicated, in part, on those current income determinations. Husband has not carried his burden on appeal to persuade us the trial court erred in determining the amount of his spousal support arrearages.

### DISPOSITION

The judgment and order are affirmed. Wife is entitled to costs on appeal.


                                                                          McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.


22