Filed 6/26/14  Boatman v. Clarkson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SUZAN E. BOATMAN,<br><br>            Respondent,<br><br>v.<br><br>PHILIP R. CLARKSON,<br><br>            Appellant. | 2d Civil No. B248676<br>(Super. Ct. No. FL100736A)<br>(San Luis Obispo County) |

Philip Clarkson appeals from the judgment denying his request for $8,500 a month permanent spousal support after he took an early retirement.  He lived off his wife's earnings for four years before terminating his 32+ year marriage with her.  The trial found that Clarkson, an attorney with 30 years litigation experience, had the job skills to supplement his income and that it would be unjust to require Boatman to go back to work and/or use her separate property for Clarkson's support.  (Fam. Code, § 4320, subd (n).)[1]  Because it was a long-term marriage, the trial court retained jurisdiction if a change of circumstances warranted future support. (§ 4336, subd. (a).)   We affirm.

---

[1] All statutory references are to the Family Code.

*Facts and Procedural History*

Clarkson (age 61) and Boatman (age 61) are licensed attorneys and have two adult children. After Clarkson and Boatman passed the California Bar exam in 1978, they moved to San Luis Obispo and established Clarkson & Boatman, a Professional Law Corporation. Boatman practiced family law. Clarkson worked as a conflict public defender, did criminal appeals and administrative law hearings, and became a civil litigator specializing in lemon law consumer cases. During the marriage, they built a single family residence, purchased a San Luis Obispo rental and two triplexes in Porterville, and bought a 48 percent interest in a commercial building in Ware, Massachusetts. Using her separate property, Boatman purchased the remaining interest in the building. During the marriage, Boatman received partnership income from the Boatman Family Partnership and purchased an office building in San Luis Obispo with her mother (now deceased).

In 2007 and 2008, Clarkson (age 55) decided to retire early and withdraw from the active practice of law. Boatman was shocked to learn that Clarkson was no longer taking cases. Rather than work in the office, Clarkson gardened, golfed, skied two months out of the year, hiked, jet skied, and took extended trips. Every summer, he vacationed at his family's cabin at Lake Geneva, Wisconsin.

Boatman realized they were drifting apart and decided to retire in January 2010. After they separated, Boatman filed a petition for marital dissolution on October 15, 2010. Most of the property issues were settled in mediation.

Clarkson sought $8,500 a month permanent spousal support. At trial, the evidence showed that Clarkson and Boatman enjoyed an upper-middle class standard of living that required $150,000 to $225,000 a year gross income. Throughout the marriage, they lived off the law firm income and the rental income from the commercial property in Ware, Massachusetts. As a married couple, they put their children through college and accumulated $700,000 in tax deferred retirement and investment accounts. Boatman insisted that they live within their means, not borrow excessive sums of money, and not invade her separate property to fund their lifestyle.

At trial, Clarkson stated that he had no intention of looking for work. Clarkson told a vocational counselor that he was a "nomad" and did not know where he wanted to live, perhaps California or Wisconsin, or both. Expert testimony was received that Clarkson had the ability to resume practicing law and earn between $125,000 and $237,000 a year. Although Clarkson claimed he had back problems and high blood pressure, a medical expert testified that it would not prevent his reentry into the job market.

The trial court found that Clarkson's average gross monthly income was $5,300, consisting of rental income and $1,842 a month that could be drawn from his IRA account for the next 24 years.[2] Clarkson had other income producing assets including a $283,709 equalizing payment, $21,562 in accounts receivable from the law firm, and his fractional interest in the Massachusetts commercial property. Clarkson also owned two triplex units in Porterville, the rental in San Luis Obispo (the Woodbridge property), and a family cabin in Wisconsin. Rather than rent the San Luis Obispo rental, Clarkson decided to maintain two residences, one in San Luis Obispo and the other in Lake Geneva, Wisconsin.

Applying the section 4320 factors, the trial court found that Clarkson had a significant earning capacity and could meet or exceed the marital standard of living if he re-entered the job market. Although Clarkson claimed that he suffered from high cholesterol, high blood pressure, and degenerative disc disease, the court found that "none of these conditions would significantly interfere with Clarkson's ability to engage in part-time or full-time gainful employment."

*Discussion*

Clarkson argues that the judgment is not supported by the evidence and violates section 4320. A trial court has broad discretion in awarding spousal support so long as it considers the factors set forth in section 4320 with the goal of accomplishing

---

[2] The trial court found that Clarkson could draw $1,842.40 a month from his IRA account and receive a $22,000 yearly stream of income until he reached age 85 in 2035.

substantial justice for the parties. (*In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 130-132; *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 99.) The section 4320 factors, which include the parties' earning capacity and ability to pay, take into account: income, assets, and standard of living; duration of the marriage, the needs and marketable skills of the supported party; and the goal that the supported party become self-supporting. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.) The trial court, in its discretion, determines the appropriate weight to accord each factor. (*Ibid*.) " ' "Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing [spousal support] orders." [Citation.]' [Citation.]" (*In re Marriage of Drapeau* (2001) 93 Cal.App.4th 1086, 1096.)

*Disparity in Property and Income*

Clarkson complains that Boatman's property is valued at $4.8 million and that Clarkson's separate and community property is valued at $1.610 million. Boatman has four to six times more income ($19,587 a month versus Clarkson's $5,300 a month) but the income is largely attributable to Boatman's separate property investments. Section 4320 requires that all income sources, whether rooted in separate property or former community property, be considered in determining the supporting party's ability to pay. (*Marriage of Epstein* (1979) 24 Cal.3d 76, 91, fn. 14; *Marriage of Terry* (2000) 80 Cal.App.4th 921, 930-931.) The trial court may consider the supported party's investment income and ability to make penalty free withdrawals from his or her IRA account withdrawals, as was the case here. (See e.g., *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 52-53; *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 13; Hogoboom & King, Cal. Practice Guide, Family Law (The Rutter Group 2013) ¶ 6:882, p. 6-316.) The trial court did not abuse its discretion in finding that Clarkson could make up any shortfall in his living expenses by withdrawing $1,842 a month from his IRA account over the next 24 years. Nor did it err in finding that Clarkson would receive income from the $283,709 equalizing payment and accounts receivable ($21,562) from the law practice.

Clarkson complains about his reduced income but it was his own doing. At age 55, Clarkson decided to withdraw from the active practice of law and take an early retirement without discussing it with Boatman. Because of the deteriorating relationship, there was no meaningful discussion of retirement. The trial court found that Clarkson "spent a considerable amount of time relaxing, hiking, skiing, gardening and enjoying the benefits of the earnings generated from Boatman's continued self-employment, as well as the use of her separate property income generated from the Ware, Massachusetts commercial venture. It cannot be said that Clarkson did all of this with Boatman's consent; rather, his actions were grudgingly tolerated." Clarkson's unilateral decision to retire cost the community approximately $500,000 between 2007 and January 2011 as he drew half the office income from Clarkson & Boatman. Clarkson testified that he had no intention of looking for work. The trial court did not err in finding that spousal support will undermine the legislative goal that Clarkson become self-supporting. (§ 4320, subds. (l) & (n); *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525.)

*Marital Standard of Living*

Clarkson argues that it is unfair to require him to return to work because he and Boatman agreed to take an early retirement at age 55. Boatman testified that early retirement was never discussed and that Clarkson's retirement was unannounced. Boatman's testimony was corroborated by office staff who testified that Clarkson stopped taking new cases and never discussed retirement. Laddie Gorski, Clarkson's legal assistant and secretary for 20 years, never heard Clarkson say that he intended to retire at a specific age or date. After Boatman learned that Clarkson was taking an early retirement, she told him that it was unfair and asked how they could afford it. Boatman asked Clarkson to "show me the numbers[?] And he would never . . . show me the numbers. So I assumed that meant we really couldn't. And I let it drop which was my mistake. [¶] . . . [Clarkson] took a lot of ski trips. He golfed. He took trips."

Citing *Marriage of Andreen* (1978) 76 Cal.App.3d 667 and *In re Marriage of Beust* (1994) 23 Cal.App.4th 24, Clarkson argues that Boatman has four to six times more income and can afford to pay spousal support. In *Andreen* and *Beust* the supported

5.

spouse's income potential was far below the marital standard of living. Clarkson, on the other hand, can enjoy and surpass the marital standard of living by returning to work. He is an experienced and talented attorney with no major health problems. Clarkson, by choice, has not worked or looked for work since 2008 and leads an active lifestyle that includes extended trips, downhill skiing, golf, softball, hiking, jet skiing, and cross country trips by plane and automobile.

The trial court found Clarkson "has a significant earning capacity. He has both the ability and opportunity to earn significant income. A full-time practicing attorney, with Clarkson's skill set and experience, should be able readily to find employment in the San Luis Obispo legal market earning approximately $150,000 per year." The court found: "Even on a part-time basis, Clarkson should be able to augment his income from between $40,000 to $80,000 annually . . . . [¶] . . . There is no physical impediment preventing him from doing so, and it is a very reasonable course of action that would allow Clarkson to maintain, or come close to maintaining, the marital standard of living before reaching the putative retirement age of 65." The court reasonably concluded it would be unjust to require Boatman to go back to work or invade her separate property for Clarkson's continued benefit. (§ 4302, subd. (n).)

Although section 4320 requires trial courts to consider the marital standard of living, it is merely a point of reference to be used in weighing the parties' circumstances. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 484; *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1483 ["a general reference point"]; *In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1560 ["neither a floor nor a ceiling for a spousal support award"].) Here all the support factors were considered including the marital standard of living, Clarkson's earning capacity and decision not to return to the work force, Boatman's ability to pay support, each party's needs, the duration of the marriage, the age and health of the parties, the parties' respective assets and obligations, the tax consequences of spousal support, the relative hardships, and the goal of self-support.

As a reviewing court, we do not reweigh the evidence of the parties' circumstances or standard of living. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.) The policy of the law is to encourage self-support. (§ 4320, subd. (l); *In re Marriage of Schulze, supra,* 60 Cal.App.4th 519, 525.). The marital standard of living is one of many factors to be considered in adjudicating spousal support. It was not intended, and never has been viewed, as the sole determinative factor. (*Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 307; *Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 207; *Marriage of Smith, supra,* 225 Cal.App.3d at p. 484.) Where, as here, the spouse fails to seek employment and is capable of full time employment, the trial court does not abuse its discretion in denying support. (*In re Marriage of Mason* (1979) 93 Cal.App.3d 215, 221.)

*Gavron Warning*

Clarkson argues that the trial court erred in not giving a *Gavron* warning (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705) that he needed to become self-supporting. A *Gavron* warning is appropriate where spousal support is subject to modification or termination. (§ 4330, subd. (b).) Unlike *Gavron,* the trial court did not order support or modify an existing support order. No *Gavron* warning was required. Consistent with section 4336, the trial court reserved jurisdiction to award post-judgment support if there is a change of circumstances. (*Marriage of Ostrander* (1997) 53 Cal.App.4th 63, 65.)

The judgment is affirmed. Boatman is awarded costs on appeal. NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

7.

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Philip R. Clarkson, on pro per, Appellant.

John F. Hodges, Daniel L Helbert, for Respondent.