Filed 10/27/20  Shirazi v. Haghighi CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MAHMOUD SHIRAZI,<br>        Petitioner and Appellant,<br><br>v.<br><br>FARANAK HAGHIGHI,<br>        Respondent and Respondent. | A155557<br><br>(Marin County Super.<br> Ct. No. FL1502263) |

In 2016, the trial court issued a judgment dissolving the marriage between petitioner Mahmoud Shirazi and respondent Faranak Haghighi, which included a denial of Shirazi's request for spousal support.  In 2018, Shirazi asked the court to order Haghighi to pay him $5,000 a month based on changed circumstances, as well as his attorney fees and costs.  The court denied these requests.  Shirazi appeals from that denial on multiple grounds. We conclude the court did not err and, therefore, affirm.

## BACKGROUND

### I.

### *Shirazi's Marriage Dissolution Petition*

In 2018, Shirazi requested a modification of his spousal support in an action he initiated in the Marin County Superior Court in 2015 to dissolve his

1

18-year marriage to Haghighi. In 2015, he was about 65 years old and Haghighi was about 53, and they had no children.

## A. Shirazi's Withdrawal From the Trial

After Shirazi filed his initial petition, the parties stipulated and the court ordered that Haghighi was to advance Shirazi $25,000 for legal fees. Two different attorneys represented him for periods of time. A month before the scheduled July 2016 trial, Haghighi offered to advance Shirazi another $7,500 for legal fees on the condition that it be paid directly to his attorney. Shirazi refused the offer. He appeared on the first day of trial and asked for a six-month continuance to find new counsel. The court, citing Shirazi's rejection of Haghighi's offer and the longstanding trial date, found no good cause to continue the trial, especially because it would prejudice Haghighi. Shirazi said he would leave if the court did not continue the trial, the court said it would proceed regardless, and Shirazi left.

## B. The Court's Judgment After Trial

After trial, the court issued a written judgment in July 2016 (2016 judgment), in which it made factual findings, granted the dissolution, divided the community property and denied Shirazi's request for spousal support.

The court wrote that Haghighi had presented evidence indicating that she had supported the parties with her earnings as a registered nurse and from two other jobs, that Shirazi owned and had long operated an unprofitable "mini-mart" business in San Rafael, and that the parties' largest community asset was a shared residence in Mill Valley. It accepted Haghighi's evidence regarding community assets and ordered that Shirazi would receive a total cash payment of $122,247.82, adjusted for advances and the division of vehicles, and would also receive his share of Haghighi's

2

retirement accounts. Haghighi was ordered to promptly pay Shirazi $22,475.82 so he could find new housing.

The court rejected vague pretrial allusions by Shirazi that Haghighi had siphoned off money from the community. It found Haghighi had provided modest support for her mother, while most of her earnings had been used to pay the parties' living expenses, accumulate savings, fund Shirazi's travel to Iran and pay other expenses he incurred to obtain a significant separate inheritance there, fund Shirazi's business and pay for Shirazi's extraordinary expenses, such as his lease of a Mercedes-Benz. The court found "[v]ery significant community funds" had funded Shirazi's activities but did not order reimbursement because Haghighi did not request it.

The court denied Shirazi's request for spousal support based on an analysis of the factors outlined in Family Code section 4320 (which we will discuss further), although it concluded that Haghighi could afford to pay some spousal support. It based its analysis on Haghighi's earnings as a registered nurse although she held two other jobs at the time because Shirazi did not contribute to household expenses and made profligate purchases, and because Haghighi saw work as a respite from an abusive home environment, circumstances that would not continue after dissolution.

The court doubted Shirazi's need for spousal support for two reasons. First, he had declared his income as $272 in social security and a negative $1,200 from his business despite the court having "repeatedly advised [him] that he should seek employment that is remunerative." Nonetheless, it found, "[h]e has steadfastly declined. In an April 2016 filing[] he states[,] 'This business has not made a profit for several years, but I am still hoping that I will be able to bring it to profitability as it was moderately profitable for many years.' . . . Given the contradictory nature of the submissions (the

3

history of losses over the last 18 years vs. the 'moderately profitable' statement above) the court can only assume that [he] derives some income from this business which may not be properly documented."

Second, the court found that Shirazi had undisclosed resources in Iran based on Haghighi's testimony "that [Shirazi] inherited a large parcel of land in Iran, that he made several trips to Iran to resolve the sale of his interest in that land, and that she saw a court order awarding [Shirazi] the equivalent of $400,000 for his interest. She also saw a statement indicating a balance in a CD in the amount of $200,000 for [Shirazi]." The court found that "[Shirazi] has been secretive about inquiries and has not revealed the existence of these monies/accounts to [Haghighi] or to the Court."

The court also rejected Shirazi's contention that he provided significant support to Haghighi while she pursued her nursing license: "At trial [Haghighi] explained that she had a high level nursing license in Iran but arrived in this count[r]y without a license or proper work permits. She spoke of walking down the streets looking for entry-level retail jobs, working as a cashier at a drugstore chain, working at a skilled nursing facility and finally obtaining her nursing license. She eventually obtained an advanced nursing degree (while working). Rather than assisting her, [Shirazi] stented [*sic*] her efforts to advance her earnings or education. He was not supportive, did not provide financial support, made transportation difficult for her, and made efforts to keep her in a subservient role. Furthermore, even if [he] had provided any support to [her] the community has more than benefited over the length of this marriage and this factor does not support [his] position."

The court further found that Haghighi had paid some of Shirazi's credit card debt. Further, Shirazi had taken $40,000 in community assets to pay some of his own credit card debt but had not paid this debt, leaving a mystery

4

as to what he did with that money.  Also, Haghighi had given him her earnings for a time and it was unknown what he did with that money.  The court found that Shirazi's failure to contribute to the parties' finances and his continual drain of community resources had created a hardship on Haghighi, but it "[could not] ascertain any current hardship to [Shirazi] since he failed to participate and . . . disclose."

Finally, the court found two categories of "just and equitable" factors to be "dispositive."  First, Haghighi had been "quiet and cooperative" throughout the proceedings, "paid all community expenses, agreed to reasonable advances for fees and agreed to reasonable advances to [Shirazi]," without asking for more than half of the community property or seeking reimbursement of community funds from Shirazi.

Second, Haghighi had related "a history of coercion and control dating back to 1997. . . .  [Shirazi] thwarted [her] efforts at employment when she arrived.  He belittled her, insulted her, and isolated her. . . .  Initially he controlled all finances . . . .  He refused to assist her in getting a driver's license or the use of a car. . . . [¶] At one point he took her passport and tore it up in her face . . . .  He threatened to have her deported.  She described one incident when he threw a chair at her, then called the police and said that she had attacked him with a knife. . . .  Verbal and emotional abuse was the norm."  Haghighi's testimony regarding this domestic abuse was "credible and compelling," and consistent with the court's own observations.  The court concluded, "While other factors may make an award of spousal support appropriate, this court cannot in good consc[ience] require the victim of sustained, significant abuse to pay spousal support to her abuser.  Spousal support is therefor set at zero."

5

### *Shirazi's Request for Spousal Support Based on Changed Circumstances*

In March 2018, Shirazi requested the court order Haghighi to pay him $5,000 a month in permanent spousal support based on changed circumstances. These changes were that "[Haghighi's] income has increased since the time of Judgment" and he was recently "terminated" from his housing, where he had paid only $600 per month.

In a supporting declaration, Shirazi stated that he had "been unsuccessful at becoming self-supporting"; he was recently evicted from a marina where he had resided on a boat for $600 a month, with the result that he would have to rent an apartment for $2,800 to $3,200 per month; and he had "incurred extensive debt" that he could not pay. He asserted Haghighi's "wages had continued to increase" and she had "received a return of a dowry in the amount of $50,000" since entry of the 2016 judgment. He also requested attorney fees of $5,000.

The court held an evidentiary hearing regarding Shirazi's request, at which Shirazi and Haghighi testified. Their testimony rehashed some of the issues that were resolved in the 2016 judgment. We summarize only the testimony that is relevant to our resolution of this appeal.

**A. Shirazi's Testimony**

Shirazi testified that he was 67 years old, was at retirement age and was receiving $278 in social security monthly. For the past 21 years, he had owned and operated his mini-mart business, a "little store in downtown San Rafael," where he worked about 35 hours a week and which he enjoyed operating. His store was in a 200-square-foot space, which did not allow him to "create a lot of sales, so seasonally sometimes it ma[de] a little bit of money, and sometimes [it] los[t] money," which "even[ed] out basically." He

6

could not rely on income from the store, and his social security and periodic business income did not pay for his approximately $4,243 in monthly living expenses, which he was paying with the money he received from the dissolution of his marriage. He understood Haghighi's income had increased since the dissolution.

Documents considered at the hearing indicated that Shirazi's business had ordinary business losses of $2,907 in 2015 and $6,383 in 2016, and a net operating loss of $9,295 in 2017. He had earnings during only five of the 18 years of his marriage. He testified that it had been "beneficial" to Haghighi that his business lost money because the losses offset the taxes she had to pay on her earnings.

Shirazi further testified that, as indicated on an income and expense declaration he submitted to the court, he had a total of $50,500 in deposit accounts such as checking, savings, credit union and money market accounts; $18,664 in a Charles Schwab account and an IRA; and held a modest amount of interest in some real property, including property Haghighi had sold to him after the dissolution for one dollar. He had $32,604 in credit card debt, which he could not pay. He had recently learned that he was still owed about $57,000 from an asset that was not divided upon dissolution. Also, he had arranged for the return of a "dowry" to Haghighi of $50,000 from a "family legacy account" in Iran that he "manage[d]," and which now was "cleaned out." He projected that if he continued to spend money at his present rate he would be homeless the following year.

Shirazi said he lived on a small boat, which he had kept at a local marina until he was recently evicted. Because the boat engine was broken, he had it towed to a shipyard, where he was currently staying until it could be repaired. For a few weeks, he had looked for a one-bedroom apartment in

7

some local areas and had found the average monthly rent was about $2,950. Given his need for an apartment, he estimated his total monthly expenses would be $6,443.

Shirazi said he was "almost retired" and, although he was trying to "produce with activity here and there," there was "nothing" he could "go and produce effectively." He was not "ready" to go back to school at his age. He was "not completely in good physical shape" because of "a backache," could not stand for long time and was not supposed to lift anything heavier than about 30 pounds. He had no special training besides his business experience and, in his view, he would not be able to find another job because prospective employers could hire a younger person and not have to deal with his limitations. He had not made any effort to find another job since he petitioned to dissolve the marriage three years before, in 2015. He enjoyed working at his mini mart, where he could "meet a lot of people," and "would rather to do something constructive" like he was doing than be "sitting in a boat and looking at the sky." There was no possibility that he could become self-supporting in the very near future, and his lifestyle was a far cry from the one he had enjoyed during marriage, which had included nice cars, a house and travel.

### B. Haghighi's Testimony

Haghighi testified that when the 2016 judgment was issued, her annual income from nursing work had been $145,621, based on an average monthly income of $12,135. In 2017, she had earned $152,834 for her nursing work and $19,130 for her part-time teaching work at a local university. From July 2016 to February 2018, her hourly pay rate for her nursing work had changed from $77.71 to $80.43, about a three and a half percent increase. As of April 2018, her nursing income was $13,542, and she

also had received $1,290 in overtime and $2,644 for her teaching work. Also, she had received $32,000 in dowry from Shirazi after the marriage dissolution.

Haghighi said she still lived in the Mill Valley residence, for which she had a $400,000 loan. When asked about the residence's fair market value, she said a condominium in the area had recently sold for about $700,000. She contributed $1,900 a month to her retirement plan and $2,400 a month to her savings and had cash accounts totaling $85,000. Her average monthly expenses were $9,731, which included $800 a month for a new car. Her total debts, including her home loan and credit card debt, totaled $432,642.

Haghighi also testified that when Shirazi petitioned to dissolve their marriage, she gave power of attorney to her sister in Iran to request her dowry, a documented requirement of her marriage under Iranian law. She obtained a court order in Iran for discovery of Shirazi's liquid assets there and found an account of Shirazi's that was his alone, into which he had deposited $200,000 in 2009. She also learned that in 2009 Shirazi had sold some real property in Iran for $400,000. She did not know what he had done with the proceeds.[1]

## C. The Court's Statement of Decision

At Shirazi's request, the court issued a statement of decision regarding his request for modification of his spousal support, first filing a tentative statement of decision in August 2018 and filing a virtually identical final statement in September 2018. The court correctly noted that it could only exercise its discretion to grant a request for modification of his spousal support if the requesting party showed a material change of circumstances

---

[1] It is unclear whether Shirazi's $200,000 deposit into the Iranian account in 2009 was part of, or in addition to, the proceeds of the real estate sale.

since issuance of the previous order, and after the court reviewed the factors outlined in Family Code section 4320. It found, among other things, that as in 2016, Shirazi continued to work in a purportedly unprofitable cash business, a commitment to which could only be explained by the existence of unreported income, a circumstance that was implied by Haghighi's testimony; that Shirazi held "money overseas" that he had not disclosed, and was "unable or unwilling to provide this Court with the scope of his financial holdings"; that he had not accounted for the funds he received at dissolution; that he was in "good health"; that he had made "no effort to become self-supporting" despite "many years" of admonishments; and that he insisted on residing in the southern part of Marin County, where rents were higher, and would not consider living with a roommate to reduce his rental costs.

Regarding the balance of hardships, the court found Haghighi had "endured years of abuse and hard work to secure her current stability and prepare for her own retirement" and had paid for Shirazi's "lavish lifestyle," including his lease of a Mercedes-Benz. "Requiring her to pay spousal support under these circumstances would further disadvantage her." The court also found there was a "[h]istory of domestic violence."

The court concluded that "[Shirazi] is unable to meet his burden and provide significant evidence that there has been any change of circumstances. He still works the same job and works the same number of hours operating an unprofitable business. While [Haghighi's] testimony was credible, [Shirazi's] was not. He failed to disclose his full income in his Income and Expense Declaration. He also failed to explain how he makes a living off a business that has not operated with a profit since 1995." The court denied Shirazi's request for modification of his spousal support. It denied his

10

request for attorney fees and costs because his post-dissolution payment of Haghighi's dowry indicated "he has access to unreported assets."

Shirazi filed a timely notice of appeal.

## DISCUSSION

Shirazi argues the trial court abused its discretion in denying his request for modification of spousal support because no evidence showed he hid foreign assets and he proved changed circumstances. He also argues that the court should have granted his request for attorney fees and costs. Haghighi disagrees with Shirazi on all these points and also argues we should dismiss Shirazi's appeal because he appealed from the court's nonappealable tentative statement of decision, rather than its final one. We reject Haghighi's appealability argument and conclude the trial court did not err in denying Shirazi's requests.

## I.

### *Shirazi Has Filed an Effective Notice of Appeal.*

Haghighi argues we should dismiss Shirazi's appeal because his notice of appeal indicates he is appealing from the non-appealable tentative statement of decision filed by the court in August 2018, which error Shirazi compounded by his repeated citation to that tentative decision in his appellate briefing.

"The general rule is that a statement or memorandum of decision is not appealable." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) However, "[r]eviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Ibid.*) The court's final statement of decision was filed in September 2018. Clearly the September 2018 final statement of decision was

11

intended as the court's final decision on the merits of Shirazi's request. That is an appealable order.

Shirazi's statement of appeal refers to the court's tentative statement of decision, which is not an appealable order. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1121, fn. 3.) Nonetheless, we must construe notices of appeal liberally (Cal. Rules of Court, rule 8.100(a)(2)) and "may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (*Id.*, rule 8.104(d)(2).) Consistent with these rules, where it is "reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced," the notice of appeal may be interpreted to apply to an existing judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 22.) Thus, courts have repeatedly concluded in circumstances like those here, such as when a notice of appeal refers to an order sustaining a demurrer rather than to the final judgment, that premature notices of appeal were effective. (See, e.g., *Gu v. BMW of North America LLC* (2005) 132 Cal.App.4th 195, 202 [appeal from order sustaining demurrer effective]; *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1353, fn. 5 [same].)

We liberally construe Shirazi's appeal as an appeal from the court's final statement of decision because it is reasonably clear he intended to appeal from the final statement of decision and because his error did not mislead or prejudice Haghighi. Shirazi filed his notice after the court filed its final statement. He cites to the tentative statement a couple of times in his appellant's brief but more frequently cites to the final statement. And in any event, the two statements are virtually identical. In short, we conclude he filed an effective notice of appeal. We now turn to the merits.

12

***Substantial Evidence Supports the Court's Denial of Spousal Support.***

Shirazi argues that the trial court abused its discretion because, first, there is no substantial evidence to support the court's findings that he was not truthful about his foreign assets and, second, he established changed circumstances. Neither argument is persuasive.

**A. Relevant Law**

"A spousal support order is modifiable only upon a material change of circumstances since the last order [in this case, the 2016 judgment]. 'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246 (*West*).) A change in circumstances is required because " '[o]therwise, dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modification with no burden of showing a justification to change the order. Litigants " 'are entitled to attempt, with some degree of certainty, to reorder their finances and life style [*sic*] in reliance upon the finality of the decree.' " [Citation.] Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order.' " (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479.)

Family Code section 4320[2] states criteria a court must consider in determining a spousal support request. This determination "is supposed to

---

[2] Family Code section 4320 states: "In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) All documented evidence of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of:

"(1) A plea of nolo contendere.

"(2) Emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party.

"(3) Any history of violence against the supporting party by the supported party.

"(4) Issuance of a protective order after a hearing pursuant to Section 6340.

"(5) A finding by a court during the pendency of a divorce, separation, or child custody proceeding, or other proceeding under Division 10 (commencing with Section 6200), that the spouse has committed domestic violence.

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

reflect a complex variety of factors established by statute and legislatively committed to the trial judge's discretion, including several factors which tend to favor reduced support, such as the 'goal' that the supported spouse should become self-supporting within a reasonable period of time." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525.) A trial court considering whether to modify a spousal support order considers these same criteria. (*West, supra,* 152 Cal.App.4th at p. 247.)

We review a request for modification of a spousal support order for abuse of discretion, determining whether the trial court followed established legal principles and based its findings on substantial evidence. (*West, supra,* 152 Cal.App.4th at p. 246.)

## B. Analysis

Shirazi's appellate arguments amount to an effort to reargue the evidence presented at trial. Also, he ignores the substantial evidence regarding the court's ruling.

Regarding his hiding foreign assets, Haghighi testified in the 2018 evidentiary hearing regarding Shirazi's request for modification of child support that she learned with the help of Iranian counsel that Shirazi had deposited $200,000 in 2009 in an account in Iran belonging to him alone and that in 2009 Shirazi had sold some real property in Iran for $400,000. The court found her testimony overall to be credible, a determination that we will not second-guess. (See, e.g., *People v. Smith* (2005) 37 Cal.4th 733, 739, [" ' "it is the exclusive province of the trial judge or jury to determine the

---

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time . . . .
"(m) The criminal conviction of an abusive spouse . . . .
"(n) Any other factors the court determines are just and equitable."

15

credibility of a witness and the truth or falsity of the facts on which that determination depends" ' "].) Shirazi ignores this testimony.

Also, the record indicates that Shirazi failed to disclose his foreign assets to the trial court. On appeal, he contends that he expressly disclosed the money he held in his "family legacy account" in Iran, from which he paid Haghighi's dowry, when he reported on his Income and Expense Declaration that he had deposit accounts of one kind or another containing a total of $50,500, and that he expressly disclosed the real property he held in Iran, among other real property, when he reported in his statement that he held some unspecified real property. However, there is nothing in his declaration—and the evidence does not support the inference he now asks us to draw—that these assets are what remains of the several hundred thousand dollars in assets he previously held in Iran. Further, he testified at the evidentiary hearing that a "family legacy account" in Iran had been "cleaned out" by his payment of a dowry to Haghighi, contradicting his assertion on appeal that he included assets from this account in his declaration by stating that he held $50,500 overall in deposit accounts. In any event, the values he declared are far less than those Haghighi testified he had received in 2009, and he provided no explanation for the difference.

Most importantly, regardless of how Shirazi represents the details behind his general assertions in his declaration below, under our substantial evidence standard of review, "[w]e do not determine credibility or reweigh the evidence. [Citation.] If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding." (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) Haghighi's testimony of the extent of Shirazi's assets in Iran and the reasonable inferences that could be drawn from her testimony provide substantial evidence to support the court's

16

finding that Shirazi was not truthful about his overseas assets. Therefore, his argument that he disclosed his Iranian assets lacks merit.

As for changed circumstances, Shirazi asserted two below—Haghighi's increased income and Shirazi's anticipated increased housing costs after his eviction from a local marina. It is true that between the 2016 judgment and Shirazi's 2018 request Haghighi had received a relatively modest increase in her hourly rate as a registered nurse and, therefore, an increase in her nursing income (which the 2016 judgment relied on alone in determining her ability to pay spousal support). It also appears that Shirazi's housing costs might soon increase by some amount because of his eviction from a local marina, but Shirazi did not prove this increase would amount to the approximately $2,300 a month he projected. Even if he could no longer live on his boat (where he still lived at the time of the evidentiary hearing) to save costs (a fact that was not definitively established), the record indicates that the only alternative housing he considered were apartments in a relatively expensive part of Marin County and, further, that he did not consider living with a roommate to reduce his housing costs.

These changed circumstances were not sufficient to require the trial court to order that Haghighi pay Shirazi spousal support for three reasons: the increase in Haghighi's income was not significant, Shirazi's housing costs apparently were not a significant factor in the court's denial of support in 2016, and these factors were only two of a "complex variety of factors" outlined in Family Code section 4320 that the court was required to consider in making its determination. (*In re Marriage of Schulze*, *supra*, 60 Cal.App.4th at p. 525; see also *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1249 ["Although the marriage . . . was a lengthy one, that fact alone does not justify an unlimited spousal support award,"

17

particularly in the absence of circumstances demonstrating the spouse was incapable of becoming self-supporting].)  There was never any doubt that Haghighi was capable of paying at least some spousal support, as the court found in its 2016 judgment.  Rather, the court in 2016 denied spousal support based on its consideration of all the factors outlined in Family Code section 4320, which included its findings that Shirazi was hiding substantial foreign assets, was in good health, insisted on continuing to work in a business that was either unprofitable or provided him hidden income rather than find other renumerative work, had attempted to deter Haghighi's career advancement and taken financial advantage of her through their marriage, and had engaged in a history of coercion and control dating back to 1997 that amounted to domestic abuse.  Shirazi does nothing to demonstrate that there were any material changed circumstances regarding these circumstances, and in 2018 the court found they remained true in its final statement of decision.  Any argument that Haghighi's increased income and Shirazi's changed housing circumstances were *material* changed circumstances that required a modification of his spousal support is unpersuasive in view of the trial court's thorough review of all the factors outlined in Family Code section 4320, and its finding that most of them remained unchanged.

## III.

### *The Court Did Not Err in Denying Shirazi Attorney Fees and Costs.*

Shirazi argues that the trial court also abused its discretion in denying his request for $5,000 in attorney fees and costs that he expended to request modification of his spousal support by failing to consider all of the analysis required by Family Code section 2030.  Again, we disagree.

"The purpose of an attorney fees award in a marital dissolution proceeding is to provide, as necessary, one of the parties with funds adequate

18

to properly litigate the matter.  [Citation.]  The party seeking an award of need-based attorney-fees has the burden of establishing need." (*In re Marriage of Bendetti* (2013) 214 Cal.App.4th 863, 868.)  Family Code section 2030 provides that in a dissolution proceeding and any proceeding subsequent to entry of a related judgment, "the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (Fam. Code, § 2030, subd. (a)(1).)

When a party makes a request for attorney fees under section 2030, the trial court "shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (Fam. Code, § 2030, subd. (a)(2).)  In assessing a party's relative need and the other party's ability to pay, the court is to take into account " ' "all evidence concerning the parties' current incomes, assets, and abilities." ' " (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 406.)

Courts have the discretion to award attorney fees "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (Fam. Code, § 2032, subd. (a).)  In making this determination, "the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the

circumstances of the respective parties described in Section 4320." (Fam. Code, § 2032, subd. (b).) We review such determinations for abuse of discretion. (*In re Marriage of Siva* (2020) 53 Cal.App.5th 1170, 1182.)

Shirazi argued below that he was entitled to receive attorney fees "based upon the . . . Family Code § 4320 factors." He argues on appeal that the trial court ignored that the record showed a disparity between the parties' income and his inability to pay his legal fees and costs. This ignores the evidence we have already discussed. As we have indicated, in 2018 the trial court engaged in a careful, thorough analysis of these factors. By doing so, the court specifically considered the factors relevant to determining whether to award attorney fees under Family Code section 2030, which were the sole factors identified as material by Shirazi below. Further, the trial court denied Shirazi's request for attorney fees and costs because his post-dissolution payment of Haghighi's dowry indicated "he has access to unreported assets," and Haghighi's testimony provides substantial evidence to support this conclusion regarding substantial assets in Iran. In other words, the court concluded that Shirazi failed to show a disparity of income or his inability to pay. Shirazi offers no explanation why the court was required to engage in any further analysis of his attorney fee claim. His argument lacks merit.

## DISPOSITION

The order appealed from is affirmed. Haghighi is entitled to costs on appeal.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

*Shirazi v. Haghighi* (A155557)

21