Filed 12/14/22  Marriage of Dinovo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of DARLYN and SALVATORE DINOVO. | D080163 |
| DARLYN REBECCA DINOVO, | |
| Respondent, | (Super. Ct. No. 17FL003635C) |
| v. | |
| SALVATORE DINOVO, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Victor N. Pippins, Judge.  Affirmed.

A. Stephen Rocha for Appellant.

Darlyn Rebecca Dinovo, in pro. per., for Respondent.

## INTRODUCTION

Salvatore Dinovo (Father) appeals the family court's order granting the motion of Darlyn Rebecca Dinovo (Mother) to modify his monthly child support obligation.  Father contends the court abused its discretion under

Family Code[1] section 4058, subdivision (a)(3), by declining to include in the calculation of Mother's gross income the rental value of a church-owned home she was permitted to reside in for free as a benefit of her employment as the church's minister. He further contends the court erred as a matter of fact and law when it purportedly considered the amount that Father's current girlfriend was contributing to his monthly expenses. Finding no merit in either contention, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Postjudgment Requests for Modification of Child Custody, Visitation, and Child Support*

The parties divorced after being married for nine years and eight months and having three children. A judgment of dissolution of their marriage was entered in October 2017. The terms of the judgment were set forth in a marital settlement agreement granting Mother sole legal and physical custody of the children, establishing a visitation schedule under which Father's total time with the children was approximately 10 percent, and setting Father's child support obligation at zero. The court reserved jurisdiction to make an appropriate child support award upon proper application by either party.

In August 2020, when the children were ages 5, 7, and 15, Father filed a request for order modifying child custody and visitation. He explained that at the time the judgment of dissolution was entered, he had anticipated moving to Ohio. However, he never moved to Ohio, and he was currently living in San Diego County. He asked the court to grant him joint legal

---

[1] Further unspecified statutory references are to the Family Code.

custody, increase his visitation time with his youngest two children, and permit him to start reunification counseling with his oldest child.[2]

In March 2021, Mother filed a request for order modifying child support. She argued she had received no child support at all and that the costs associated with raising their three children should be divided between her and Father. In support of her request, she filed an income and expense declaration stating she was employed as a minister of a church in La Jolla. Her compensation included a monthly salary of $5,071 and a monthly housing allowance of $690. Based on her income, she and the children qualified for, and were covered by, Medi-Cal. Her average monthly expenses were $5,834. These expenses did not include rent or a mortgage, because she and the children were residing rent-free in a church-owned home located in La Jolla. Mother explained, "Some clergy, like myself, live in a church owned home (rectory or parsonage)." She also referred to the home as "clergy housing."

Father filed an income and expense declaration stating he was a psychologist with a Ph.D. who was employed by a psychiatric center. He received an average monthly gross income of $3,796 plus $1,083 in "collections." (Capitalization omitted.) He explained that he worked an average of 135 hours per month at a rate of $28 per hour, which was the basis of his gross earnings. He received additional, varying amounts—the " '[c]ollections' "—whenever insurance reimbursements exceeded this hourly rate.

---

[2]     Father later withdrew his requests for custody and visitation regarding his oldest child.

Father further stated he was living with his nonmarital partner, Amanda, whose gross monthly income was "[u]nknown." He identified total average monthly expenses of $8,252, of which $4,758 were paid by "**others**." These monthly expenses, as itemized in the form declaration, included housing costs (consisting of a mortgage payment, homeowner's insurance, maintenance, and real property taxes) totaling $1,995, as well as additional amounts allocated to groceries and household supplies ($1,500), eating out ($320), and utilities ($230), as well as other expenses not at issue here.

In a separate filing, Mother averred that Father was living in Amanda's home, and the person contributing to his monthly household expenses was Amanda.

The chief dispute between the parties in the determination of Father's child support obligation centered around whether and to what extent the family court should consider each parent's housing expense, or lack thereof, when calculating that parent's monthly gross income. Father urged the court, pursuant to section 4058, subdivision (a)(3),[3] to include the fair market rental value of Mother's clergy housing benefit in its tabulation of her income. He filed copies of internet rental listings of homes in La Jolla and asserted the fair market rental value of the home in which Mother and the children were residing was between $7,382 and $14,008 per month. He asked the court to impute at least $7,382 to Mother's income when determining her

---

[3]   The annual gross income of each parent means income from whatever source derived, except as specified in subdivision (c) and includes, but is not limited to, the following:  [¶] . . . [¶] (3)  In the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts."  (§ 4058, subd. (a)(3).)

monthly income. He submitted a DissoMaster[4] report in which $4,879 had been entered as his gross income, and $5,761 in wages and salary plus an additional $7,382 of "[o]ther nontaxable income" had been entered as Mother's gross income. According to this report, Father's resulting monthly child support obligation was $480.

Mother opposed inclusion of the rental value of her housing benefit as income. In a declaration explaining the basis of her opposition, she averred that clergy housing is not considered income for income tax purposes or for purposes of determining income for benefits like Medi-Cal. She further averred that residing in a church-owned home did not add to her income. It reduced her expenses, but her expenses were still considerable since she was caring for three children. She also asserted, based on copies of internet rental listings, that the fair rental value of the home was actually between $3,000 and $6,000. She stated, "[Father] also lives in a home that is owned by his girlfriend who covers housing costs/mortgage payments . . . : Shall the value of that home be imputed to him as income for that reason?"

Mother further averred that Father was underemployed, that the average income for a licensed clinical psychologist with a Ph.D. was $105,544, and that Father was able to remain underemployed because "most of his expenses are paid by his significant other." She asked the court to impute income of $105,544 to Father due to his intentional underemployment. She

---

4 "The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by section 4055, which involves, literally, an algebraic formula." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523, fn. 2 (*Schulze*).)

5

further requested that the court find, pursuant to section 4057.5,[5] that Father's underemployment constituted an extraordinary case in which excluding that income would lead to extreme and severe hardship of any child subject to the child support award, and, based on that finding, consider Amanda's income in calculating Father's support obligation.

Father opposed Mother's request that the family court consider Amanda's income in calculating his support obligation. He argued the requirements of section 4057.5 were not satisfied because Mother had not presented evidence of Amanda's income, nor of extreme and severe hardship to the children if Amanda's income were not considered.

II.

*Family Court Orders Modifying Child Custody, Visitation, and Child Support*

In November 2021, the family court issued a findings and order after hearing modifying child custody and visitation. The parties were granted joint legal custody over the two youngest children. Mother retained sole legal custody of the oldest child. Mother also retained sole legal custody "regarding all issues relating to the children's mental health." On the issue of physical custody, the court ordered that the children were to reside primarily with Mother. Father was granted regular parenting time with the two youngest

---

5      "The income of the obligor parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship to any child subject to the child support award, in which case the court shall also consider whether including that income would lead to extreme and severe hardship to any child supported by the obligor or by the obligor's subsequent spouse or nonmarital partner." (§ 4057.5, subd. (a)(1).)

6

children from Wednesday afternoon until Thursday morning and on alternate weekends, in addition to annual holidays and vacation time.

In December 2021, the family court issued an ex parte minute order modifying Father's child support obligation to $1,199 per month. Attached to the court's minute order was a DissoMaster report into which the court had entered $4,879 as Father's monthly wage and salary income, and $5,761 as Mother's monthly wage and salary income. No other monthly income was attributed to Mother or Father. Based on these income amounts and other monetary information not at issue here, the DissoMaster computed Father's monthly child support obligation to be $1,199.

In the minute order, the family court explained:

"As reflected in the Disso Master [*sic*] report, the Court declines to include the fair rental value of the home that [Mother] lives in to calculate support. Family Code 4058(a)(1) [*sic*] gives the court discretion to include the value of employee benefits, including reductions in living expenses, in calculating income for the purposes of support. [Father] argues that the Court should include the fair market rental value of the home that [Mother] is permitted to live in, rent free, as a benefit of her employment as a minister. The Court finds that it would be inequitable to include the value of this benefit to [Mother] while ignoring the fact that [Father], according to his own income and expense declaration, has $4,758 of his expenses paid by his current partner. If the Court were to follow [Father's] requests regarding income calculations, it would result in an inadequate amount of support to his children, which is contrary to the goals of the [F]amily [C]ode."

Father filed a notice of appeal, identifying the order from which he was appealing as the court's December 2021 order.[6]

---

6 An order modifying child support is appealable "as an order after final judgment." (*County of Los Angeles v. Patrick* (1992) 11 Cal.App.4th 1246, 1250.)

# DISCUSSION

Father challenges the family court's December 2021 minute order in two respects. First, he challenges the court's denial of his request to consider the fair market rental value of Mother's church-provided home as her income for purposes of child support. Second, he purports to challenge, in his words, "the Trial Court's finding that Appellant's girlfriend's contributions to household expenses was a special circumstance to deviate from the guideline formula for child support."

## I.

### *Legal Principles*

#### A.   *Standards of Review*

"The standard of review for an order modifying a child support order is well established. '[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below.' [Citations.] Thus, '[t]he ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court. [Citation.] The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination.' " (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233–1234 (*Williams*).)

However, "the trial court has 'a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . .' [Citation.] Furthermore, 'in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]' [Citation.] In short,

8

the trial court's discretion is not so broad that it 'may ignore or contravene the purposes of the law regarding . . . child support.' " (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282–283 (*Cheriton*), superseded by statute on other grounds as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049.)

Although Mother has not filed a response brief on appeal, we adhere to the requirement that Father, as the appellant, must affirmatively demonstrate prejudicial error. (*County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1068.)[7]

B.     *The Child Support Guidelines*

"California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. (See [§§] 4050–4076.) 'The guideline seeks to place the interests of children as the state's top priority.' (§ 4053, subd. (e).) In setting guideline support, the courts are required to adhere to certain principles, including these: 'A parent's first and principal obligation is to

---

[7]     On August 9, 2022, Mother filed a motion to dismiss Father's appeal based on the disentitlement doctrine, under which a court has the inherent discretionary power to dismiss an appeal where a party refuses to comply with lower court orders. (See *Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1229.) Dismissal of an appeal under the disentitlement doctrine is an equitable remedy subject to our discretion. (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.) We have reviewed Mother's motion, which appears to be based on the contention that Father is in contempt of the 2017 judgment of dissolution, which required the parties to notify one another promptly of any changes in employment, because Father has either provided false information regarding his employment and income, and/or has repeatedly refused to provide updated employment and income information. We deny the motion and elect to reach the merits of this appeal rather than impose the extreme sanction of dismissal.

support his or her minor children according to the parent's circumstances and station in life.' (§ 4053, subd. (a).) 'Each parent should pay for the support of the children according to his or her ability.' (§ 4053, subd. (d).) 'Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.' (§ 4053, subd. (f).)" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 283, fn. omitted.)

"To implement these policies, courts are required to calculate child support under the statutory guidelines. (See §§ 4052–4055.) '[A]dherence to the guidelines is mandatory, and the trial court may not depart from them except in the special circumstances enumerated in the statutes. (§§ 4052, 4053, subd. (k); [citation].)' [Citation.] The guideline amount of child support, which is calculated by applying a mathematical formula to the parents' incomes, is presumptively correct." (*Williams*, *supra*, 150 Cal.App.4th at p. 1237.)

To calculate child support according to the guideline formula, a court must determine each parent's monthly disposable income. (See § 4055, subds. (a), (b)(2) ["[t]o compute net disposable income, see [s]ection 4059"].) Monthly disposable income, in turn, is derived from annual gross income, which is defined in section 4058. (See §§ 4059 [annual net disposable income is computed by deducting amounts from the parent's annual gross income], 4058 [defining annual gross income].)

Section 4058 broadly defines annual gross income as "income from whatever source derived[.]" Relevant here, subdivision (a)(3) of section 4058 provides that annual gross income includes, "[*i*]*n the discretion of the court*, employee benefits or self-employment benefits, taking into consideration the

10

benefit to the employee, any corresponding reduction in living expenses, and other relevant facts." (Italics added.)

## II.

*The Family Court Did Not Abuse Its Discretion When It Declined to Consider the Fair Market Rental Value of Mother's Clergy Housing as Her Income*

Father challenges the family court's refusal to include in its calculation of Mother's gross income the fair market rental value of the church-owned home in which she was residing.[8] He contends the value of Mother's housing

---

[8] Father spends a considerable portion of his opening brief recounting Mother's position from the child support proceeding that her housing benefit was exempt from taxable income. He argues the court had discretion under section 4058 to consider the value of the benefit as income notwithstanding its characterization under federal tax law. Courts have reached different outcomes on the effect of federal tax law on the interpretation of section 4058. (See *In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 650 [federal law is persuasive on the interpretation of section 4058]; cf. *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 735 [holding recurring gifts of money could be considered income for purposes of child support even though gifts are not included as income under federal tax law; "federal tax law is not conclusive"].) Here, the family court implicitly resolved this dispute in Father's favor when it found it had the authority under section 4058 to consider Mother's housing benefit as income. As Father acknowledges, "[i]t is clear from the record . . . that the Trial Court rejected [Mother's] argument[.]" We therefore do not need to review this aspect of the court's decision, because it is unchallenged by Mother and was resolved favorably to Father. (See *In re Marriage of Moore* (1980) 28 Cal.3d 366, 374 [reversal unwarranted where the mother did not appeal, and the father suffered no prejudice from the trial court error]; *Marich v. MGM/UA Telecommunications, Inc.* (2003) 113 Cal.App.4th 415, 431 [where a trial court's ruling appeared to have been in appellants' favor, appellants could not challenge it on appeal].) Father also offers a lengthy critique of Mother's argument that the family court should rely on rents in National City to determine the value of her housing benefit. We disregard Father's criticisms because he fails to establish that the court relied on Mother's argument to his prejudice. (*In re Marriage of Falcone &*

11

benefit was substantial and increased Mother's standard of living, and that by failing to include it in the calculation of Mother's income, the court "create[d] an unequal standard of living in both households favoring [Mother.]" He complains there was no showing that his own lifestyle was "enhanced at all by residing with Amanda." He contends the resulting child support award violated policies of ensuring that children share in the standard of living of both parents, "equaliz[ing] the living conditions . . . in the non-custodial parent's home," and "ensur[ing] that the non-custodial parent does not overpay child support."

As Father recognizes, subdivision (a)(3) of section 4058 makes the consideration of an employee benefit a matter of judicial discretion. Father fails to establish the family court abused this discretion.

As we have noted, when determining the amount of a parent's child support obligation, courts must adhere to the principles codified in section 4053. First and foremost, " '[t]he guideline seeks to place the interests of children as the state's top priority.' " (*Cheriton*, *supra*, 92 Cal.App.4th at p. 283, quoting § 4053, subd. (e).) Further, "California has a strong public policy in favor of adequate child support." (*Cheriton*, at p. 283.)

To recite these principles is to reveal the fundamental flaw in Father's arguments: whereas our state's child support laws make the children's interests the top priority, Father, through his arguments, seeks to prioritize himself. Furthermore, although Father does not acknowledge it in his appellate briefing, granting his request would have resulted in a monthly child support obligation of $480 rather than $1,199. The family court expressly found that following Father's income calculations "*would result in*

*Fyke* (2008) 164 Cal.App.4th 814, 830 [undeveloped assertions of error may be treated as waived].)

*an inadequate amount of support to his children*[.]  (Italics added.)  At no point in his appellate arguments does Father attempt to refute or undermine this factual finding.  In the absence of any such challenge, we treat the finding as true.

Accepting Father's position and reversing the court's order would, given this finding, result in an inadequate amount of support to his children—a circumstance contrary to his children's interests.  As one Court of Appeal observed in the analogous context of imputing income to a parent pursuant to section 4058, subdivision (b), "There are very few— 'a handful' overstates it— published appellate decisions which have upheld the imputation of income to custodial parents.  [Citations.]  The reason is pretty obvious.  Since the child support statutes expressly state the purpose of California's guideline child support system is to 'place the interests of children as the state's top priority' (§ 4053, subd. (e)), it is counterintuitive—often counterproductive—to impute income to a custodial parent, because the objective effect of such an imputation will be to reduce the money otherwise available for the support of any minor children."  (*In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 18–19.)

Given the family court's unchallenged finding that considering the value of Mother's housing benefit as income would have resulted in the children receiving inadequate support, we are at a loss to see how we could conclude that the court abused its discretion.  Even so, we address Father's individual arguments.

Father's claim that the child support award "create[d] an unequal standard of living . . . favoring [Mother]" is based on *County of Kern v. Castle* (1999) 75 Cal.App.4th 1442, 1451 (*Castle*).  The father in *Castle* was a noncustodial parent who had no visitation with his minor child.  (*Id.* at

13

p. 1445.) After the trial court set temporary child support at $341 per month based on his monthly salary of $2,500, the father inherited his mother's $1 million estate, which included several residential properties as well as a $240,000 lump sum. (*Id.* at pp. 1445–1447.) The father quit his job, used the lump sum to pay off his mortgage, and rented out the residences he had inherited. (*Ibid.*) And yet when it set the father's permanent child support obligation, the trial court excluded consideration of most of the benefits he received from his inheritance. (*Id.* at pp. 1444–1445, 1447, 1456.) "The net result of the father's good financial fortune was his $341 child support obligation went up to $361—a meager $20 increase per month." (*Id.* at p. 1445.)

The Court of Appeal, understandably troubled by this result, reversed. It explained, "[U]nder the current support order, [the minor child] will not benefit from the substantial assets [the father] received. There is no basis for concluding this was somehow in [the child's] best interests. The court failed to articulate any reasons why this should be so." (*Castle, supra*, 75 Cal.App.4th at p. 1456.) It held that at a minimum, "the court should have taken into consideration the additional disposable income [the father] enjoyed monthly by having paid off the mortgage on his home." (*Id.* at p. 1457.)

As this description of *Castle* makes clear, the circumstances in that case are in no sense comparable to the circumstances present here. Unlike *Castle*, in which the minor child was prevented from sharing in the fortunes of the noncustodial parent, the family court's support award here did not have such a result. Mother has primary physical custody of the children, who directly share in Mother's housing benefit because they are able to reside in the church-provided home along with her. (See § 4053, subd. (i) ["It is presumed that a parent having primary physical responsibility for the

14

children contributes a significant portion of available resources for the support of the children."].)  Unlike *Castle*, in which the trial court made no finding that its refusal to recognize much of the father's inheritance as income was in the children's best interests, here the court explicitly found that recognizing the value of Mother's free housing benefit would result in inadequate support to the children.  In short, *Castle* is inapposite, and nothing about that decision suggests that the court's refusal to consider the rental value of Mother's home as income constituted an abuse of discretion here.

Father's other arguments are just as unavailing.  Citing subdivision (f) of section 4053, he asserts that "[a] support award must reflect both parents' standard of living."  His characterization of this provision is inaccurate.  Subdivision (f) of section 4053 states, "Children should share in the standard of living of both parents.  Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children."  We discern no violation of this principle.  As we have explained, Mother has primary physical custody of the children.  To the extent her housing benefit raises her standard of living, it improves the children's standard of living, too, since they are primarily residing with her.

As for Father's claim that a purpose of the child support laws is to "equalize the living conditions . . . in the non-custodial parent's home," he does not identify the authority he relies on for this proposition.  The only policy in section 4053 that speaks to this issue is contained in subdivision (g), which provides, "Child support orders in cases *in which both parents have high levels of responsibility for the children* should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes."  (Italics

15

added.)  To the extent this is the policy Father means to rely on, he fails to establish that it applies to this situation.  Under the current custody arrangement, Father has no visitation with his oldest child, and his visitation with his two youngest children is limited to one overnight per week plus alternating weekends, in addition to annual vacation time and alternating holidays.  The child support award was based on the children spending 12 percent of their time with Father.  As such, Father fails to satisfy the statutory criterion that his level of responsibility for the children is "high."  Therefore, even assuming there are "significant disparities in the children's living standards in the two homes" (§ 4053, subd. (g))—a matter Father also fails to establish—the family court was not required to tailor the child support award so as to minimize them.

Finally, as for Father's claim that a purpose of child support awards is "to . . . ensure that the non-custodial parent does not overpay child support," he cites no authority establishing that such a policy exists.  He also fails to support his implied claim that he is overpaying child support.  To the extent he contends that when a non-custodial parent overpays child support, "this . . . can have a negative effect contrary to the best interest of the children by reducing the standard of living in the non-custodial parent's household" and "require a significant other to then make up the difference . . . for the overpayment," he cites no record evidence establishing that the hypothetical harms he identifies are grounded in the facts of this case.  As a result, we reject this claim.  (See *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 79 [an appellate court may treat as waived a point unsupported by citation to record].)  We likewise reject as legally unsupported his argument that the value of Mother's housing benefit should have been considered for the sole reason that it was "substantial."

16

(See *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672, fn. 3 [conclusory assertions advanced on appeal without foundation require no consideration].)

## III.

*The Family Court Did Not Commit Factual or Legal Error by Considering the Effect of Ignoring That Father's Expenses Were Paid by His Current Partner*

Father contends the family court, in Father's words, erroneously "consider[ed] Amanda's contribution to the household expenses as a special circumstance to deviate from the guideline formula to negate [Mother's] free housing."

Father mischaracterizes the court's ruling. As we have noted, child support calculated pursuant to the guideline formula is presumptively correct. (§ 4057, subd. (a).) A parent may rebut this presumption and obtain a deviation from the guideline by presenting evidence showing that "application of the formula would be unjust or inappropriate in the particular case" due to one or more statutorily-enumerated factors. (§ 4057, subd. (b).) These factors include cases with "special circumstances," such as when "the parents have different time-sharing arrangements for different children," or when "both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent." (§ 4057, subd. (b)(5)(A), (B).) If the court issues a support award that differs from the guideline level, it must state, in writing or on the record: (1) the guideline amount, (2) the reasons the support ordered differs from the guideline amount, and (3) the reasons the support ordered is consistent with the best interests of the children. (§ 4056, subd. (a).)

17

Contrary to Father's characterization of the support order, the family court did not deviate from the guideline formula. It ordered support in the precise amount calculated by the DissoMaster software (see *Schulze, supra,* 60 Cal.App.4th at p. 523, fn. 2); Father does not contend the software computed his support obligation incorrectly. Not only did the court award child support in the presumptively-correct amount, it made no express finding of a special circumstance and did not make the written or on-the-record statements required by section 4056. We presume that if the court had found a special circumstance and deviated from the guideline formula, it would have complied with section 4056 by stating the required findings in writing or on the record. In short, Father's characterization of the court's order is entirely unsupported by the record.

As we read the family court's ruling, it simply declined to exercise its discretion under section 4058, subdivision (a)(3), to include the value of Mother's housing benefit in the calculation of her income, and explained its reasons for this decision. Section 4058 guides a court's calculation of support under the guideline formula by establishing the scope of items and benefits that may be considered as gross income. Since subdivision (a)(3) makes inclusion of the value of an employee benefit a matter of judicial discretion, a court exercising that discretion is necessarily following the guideline formula, not deviating from it.

Even so, to say the family court exercised its discretion pursuant to the guideline does not establish that it abused that discretion. Setting aside Father's mischaracterization of the court's order, he makes two arguments that could, if they had merit, establish such an abuse. First, he contends the court committed factual error when it stated Father "has $4,758 of *his* expenses paid by his current partner." (Italics added.) Father claims the

18

court's characterization of the expenses as "his" was unsupported by substantial evidence. Second, he contends the court violated section 4057.5 when it took into account Amanda's contribution to household expenses. We address these contentions, and reject them.

A.   *The Family Court Did Not Prejudicially Err When It Stated Father's Expenses Were Paid by His Current Partner*

Father challenges on substantial evidence grounds the family court's statement that "[Father], according to his own income and expense declaration, has $4,758 of *his* expenses paid by his current partner." (Italics added.) He argues that because he stated in his income and expense declaration that he was living with Amanda, the reasonable inference is that the household expenses listed in the declaration (housing, utilities, and groceries and eating out) were shared with Amanda. He asserts his landlord was Amanda and the contribution he paid to her was rent. He refers to his combined expense of $1,820 for " 'groceries' " and " 'eating out' " and suggests it is unreasonable to infer, based on his modest income, that he incurred this food cost on his own.

Father's substantial evidence challenge fails, for two reasons. First, it is based on an impermissible weighing of the evidence. (See *In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 109.) Father does not dispute that he listed in his own income and expense declaration, a document he signed under penalty of perjury, expenses totaling $8,252, of which he claimed $4,758 were paid by "**others**." Mother averred in a declaration filed with the court that Amanda was paying "his" (i.e., Father's) household expenses. Father was in a non-marital relationship with Amanda. It was not unreasonable for the court to infer, based on these facts and circumstances, that the expenses Father listed in his income and expense declaration were his sole obligations rather than the joint obligations of himself and Amanda.

19

Second, even assuming the family court committed factual error, Father fails to establish that any such error was prejudicial. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573–574 [error of state law does not warrant reversal unless, under the particular circumstances, "there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached"].)  The expenses Father claims were shared with Amanda, rather than "his," are as follows: mortgage ($1,465), real property taxes ($394), homeowner's insurance ($61), maintenance and repair ($75), utilities ($230), groceries and household supplies ($1,500), and eating out ($320).  The sum of these expenses is *$4,045.*  Amanda's contribution to Father's overall expenses was *$4,758.* Even if the foregoing expenses were shared, Amanda was paying one hundred percent of them.  So even assuming the court erred, its point was still sound:  Father was not paying all of his own expenses.  Under these circumstances, we see no reasonable probability the court would have exercised its discretion differently absent the purported factual error.  (*Ibid.*)

B.    *The Family Court Did Not Violate Section 4057.5*

Father contends the family court abused its discretion by indirectly considering Amanda's income in determining his support obligation in violation of section 4057.5, *In re Marriage of Wood* (1995) 37 Cal.App.4th 1059 (*Wood*), disapproved on other grounds by *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 187, and *In re Marriage of Loh* (2001) 93 Cal.App.4th 325 (*Loh*).  We disagree.

Section 4057.5 provides, in relevant part:  "The income of the obligor parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship

20

to any child subject to the child support award, in which case the court shall also consider whether including that income would lead to extreme and severe hardship to any child supported by the obligor or by the obligor's subsequent spouse or nonmarital partner." (§ 4057.5, subd. (a)(1); see also *id.*, subd. (a)(2) [identical prohibition precluding consideration of the income of the obligee parent's subsequent spouse].)

In *Wood*, the Court of Appeal held this statutory prohibition extended to consideration of the lifestyle enjoyed by a parent thanks to the income of a new mate. (*Wood, supra*, 37 Cal.App.4th at pp. 1066–1068.) *Wood* involved a family court order granting a father's motion to reduce his child support obligation based on the income of the mother's new mate. (*Id.* at p. 1064.) The court attributed no income to the mother, although she previously had been working, but it did rely on the " 'upper middle class lifestyle' " she was enjoying due to the many financial successes of her new mate, a corporate takeover artist. (*Id.* at pp. 1064–1065.) It set the father's child support obligation at a level below the presumptively correct guideline amount. (*Id.* at pp. 1065, 1066.)

The Court of Appeal reversed, finding the trial court violated section 4057.5. It explained, "Although the trial court claimed only to take into account [the new mate's] income as it related to [the mother's] standard of living, this was tantamount to considering new mate income." (*Wood, supra*, 37 Cal.App.4th at p. 1066.) "In our view, the only time a trial court may consider new mate income is when not considering it will result in extreme hardship to a child. Otherwise, according to the Legislature, this new mate income is a factor which may not be taken into account." (*Id.* at pp. 1069–1070.)

In *Loh*, the father, in opposition to a request for an increase in his monthly child support obligation, submitted an income and expense declaration in which he reported gross monthly income of less than $5,700. (*Loh, supra*, 93 Cal.App.4th at p. 328.)  The mother disputed this level of income and presented evidence the father was living in his girlfriend's $800,000 house and was driving her luxury cars. (*Id.* at pp. 328–329.)  The mother argued it was " 'inconceivable' that one could 'duplicate' [the father's] 'lifestyle . . . for a sum less than $400,000 per annum.' " (*Id.* at p. 329.)  The court, explicitly relying on the father's high standard of living, found his monthly income was $9,000 and used this number to calculate his child support obligation.  (*Ibid.*)  The Court of Appeal reversed.  Relying on *Wood*, it held the trial court considered the girlfriend's income "under the 'guise of lifestyle' " and thereby violated section 4057.5.  (*Loh, supra*, 93 Cal.App.4th at p. 337.)

Turning back to this case, we find no violation of section 4057.5. Unlike *Wood*, the family court did not set Father's support obligation outside the presumptively correct guideline amount.  Unlike *Loh*, the court did not impute additional income to Father beyond the $4,879 that he reported.

True, the family court did reference Amanda's contribution to Father's living expenses when explaining why it was declining to exercise its discretion under section 4058, subdivision (a)(3), to consider the rental value of Mother's housing benefit as an item of her income.  However, we do not agree with Father's contention that the court violated section 4057.5 by doing so.  The court's order stated, "it would be inequitable to include the value of [Mother's housing] benefit to [Mother] *while ignoring the fact that* [*Father*], according to his own income and expense declaration, *has $4,758 of his expenses paid by his current partner*."  (Emphasis added.)  *Ignoring* Amanda's

payment of Father's living expenses is entirely consistent with the mandate of section 4057.5, subdivision (a)(1). The court did not purport to rely on Amanda's income, either directly or indirectly. Rather, it ignored her contributions to Father's expenses as it was required by statute to do, and considered *that* circumstance in deciding how to exercise its discretion under section 4058, subdivision (a)(3). However broad the prohibition against consideration of new mate income may be, nothing in the text of section 4057.5, subdivision (a)(1), suggests that it extends to disregarding the prohibition itself.

The family court in this case was not the first to recognize the unfairness that can result from application of section 4057.5. In *Loh*, the appellate court declined to follow cases adopting an expansive " 'anything that reduces living expenses' " approach to income under section 4058. (*Loh*, *supra*, 93 Cal.App.4th at p. 334.) It explained that "such an approach creates serious anomalies when one realizes that the most common instances of 'things that reduce living expense' are new mate or nonmarital partner income, items which the Legislature has specifically forbidden, in section 4057.5, to be taken into account in 'determining or modifying' child support." (*Ibid.*) Here the court, much like the *Loh* court, foresaw the inequity and harm to the children that would arise if it were to recognize Mother's housing benefit as income while ignoring the assistance Amanda was providing Father, and exercised its discretion under section 4058 accordingly. We disagree that the court, by recognizing this anomaly, inadvertently violated section 4057.5.

23

## DISPOSITION

The order is affirmed.

DO, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.